Argued March 22; affirmed April 18; rehearing denied May 9, 1939

# STATE *v.* DORLAND
(89 P. (2d) 595)

In Banc.

*George D. La Roche* and *Stanley Myers*, both of Portland, for appellant.

*Earl A. Nott*, District Attorney, of McMinnville (Roy A. McCourry, of McMinnville, on the brief), for the State.

RAND, C. J.  Leonard Dorland, the appellant, and one Charles Sipes were jointly indicted for the killing of Herbert Ruef and charged with the crime of murder in the first degree.  It is alleged in the indictment that the homicide was committed while the defendants were engaged in the commission of robbery.  Upon being separately tried, Dorland was convicted and sentenced to imprisonment in the Oregon State Penitentiary for the remainder of his natural life.

■ Appellant's first contention is that the indictment was insufficient to charge murder in the first degree, in that it failed to allege that the killing was done purposely or with deliberate and premeditated malice.

■ Under section 14-201, Oregon Code 1930, which defines the crime of murder in the first degree, upon an indictment which alleges that the killing was done in the commission or attempt to commit rape, arson, robbery or burglary, it is not necessary for the indictment to allege or the state to prove that it was done purposely or with deliberate and premeditated malice.  It is sufficient if it be alleged and proved that the killing was done while the defendant was engaged in the commission or attempt to commit any of said crimes: *State v. Brown*, 7 Or. 186; *State v. Ellsworth*, 30 Or. 145, 47 P. 199.

Appellant also assigns error in the admission and refusal to strike certain testimony elicited by the state and in the refusal of the trial court to grant his motion for a directed verdict.

■ After a careful reading of the more than seven hundred pages of the transcript of testimony and a study of the points urged by the defendant in support of said assignments, we are unable to find that any error was committed by the trial court in the trial of the cause. On the contrary, there was abundant evidence to sustain the verdict and we shall attempt only to make a brief resume of the facts established by the state.

The evidence shows that early on Sunday morning, August 15, 1937, Herbert Ruef, the deceased, a resident of Sheridan, in Yamhill county, Oregon, was found unconscious and in a dying condition in one of the public parks in the city of Portland. The testimony shows that there were marks upon the ground and also upon his shoes indicating that he had been dragged from the street to the place where he was lying. He was removed to the Good Samaritan Hospital, where he died a few hours later without ever regaining consciousness. Upon removing his clothing at the hospital, two one-hundred-dollar bills were found in one of his shoes and two one-dollar bills in his pockets. A post-mortem examination showed that he had sustained a skull fracture between $9\frac{1}{2}$ to 10 inches in length, and other wounds and bruises which caused his death.

The evidence further shows that on Friday before the homicide, the deceased withdrew $310 from his checking account in the First National Bank of Independence and, as testified to by the cashier, it was paid to him in three one-hundred-dollar bills and one ten-dollar bill. On the same day, after withdrawing this

money from the bank, the deceased, who had a habit of displaying his money to others, showed to several of the witnesses for the state the money he was then carrying on his person and, according to their testimony, this consisted of five one-hundred-dollar bills, one ten-dollar bill and some change, he telling them at the time that he was going to buy a place, without stating the place he intended to buy.

On the following. day, according to the evidence, the deceased was in Sheridan and while there was induced by Dorland to accompany him, his wife and his codefendant Sipes to a dance being held in Ballston, a short distance therefrom. This occurred shortly before midnight on Saturday. The evidence of numerous witnesses shows that before reaching Ballston, Dorland parked his car along the side of the road and that he, his wife, Sipes and the decedent got out of the car and that an altercation occurred between Dorland and Sipes on the one side and the decedent on the other. Numerous of the state's witnesses, either going or returning from the dance, testified as to what occurred there but none of them stopped to investigate. Those first passing said that the parties were engaged in some kind of an altercation and that at that time the Dorland party consisted of three men and one woman. Those passing a few moments later saw the two men and one woman near the parked car but did not see the third man. Those passing still later testified that they saw two men lifting another man from the ditch and putting him in the Dorland car.

Dorland, in his testimony, admitted that he parked his car at that place and that all the parties got out of the car and that he had a fight with the deceased and that he knocked him down, after which, he said, he and

Sipes picked the deceased up and put him back into the car, and that he then drove the deceased in his car to Dorland's home near Valley Junction, some distance west of Sheridan, and left the deceased in his car.

The evidence also shows that Sipes and Dorland's wife refused to return to their home with Dorland and were taken there in an automobile belonging to a neighbor. After Dorland's wife and Sipes returned home, she asked Dorland where the man was and he told her that he was in Dorland's car and she told him to get him out of there. This occurrence at the house was testified to by Nadene Fouts, a girl who had been employed by Dorland and his wife to stay with their three-year-old child during their absence that evening.

Dorland admitted while upon the stand that, after talking with his wife, he then drove the deceased to Portland and that he left him in the park where deceased was later found. After leaving the decedent at that place, Dorland testified that he returned to his home and that a short distance out of Portland he gave a ride to Paul Chimienti and Ruben Beckel, two boys who were returning to their homes after attending a late picture show. They were both called as witnesses by the state and they both testified that Dorland told them that he had brought a man to Portland who had tried to rob him and that he had knocked him cold, or words to that effect. Both of these boys testified that Dorland showed them some money he had in his pocket. Beckel testified as follows:

"Q. What conversation, if any, did you have with him? A. Well, I asked him where he lived and he didn't say. He just said he was going to the coast and he showed us some bills. Hundred dollar bills. Q. And where did he produce these bills from? A. I didn't see that. Q. Where were they when you saw them? A. In

his hand. Q. Were they open or in a folder? A. They were open. Q. Did you see how many there were? A. I think there was about two. Q. Did he say anything about them. A. Yes. Q. What did he say? A. He said a fellow tried to take them away from him. Q. Did he say how much he had? A. I think he said he had two hundred dollar bills there. Q. He said he had two hundred dollar bills? A. Yes.''

According to the testimony of other witnesses, decedent, after withdrawing the money from the bank, changed one of the one-hundred-dollar bills in payment of a sixty cents charge for beer and received $99.40 in bills of other denominations, which he placed in his billfold; that he paid his brother one dollar which he owed him and five dollars to his landlord, and expended other small sums at two beer parlors in Sheridan. The evidence shows that he was drinking beer during that day but there is no evidence that he was intoxicated, or that he spent any considerable sum of money. The evidence further shows that neither Dorland, his wife nor Sipes knew the deceased until they met him in Sheridan about 10 o'clock in the evening of August 14th. After meeting him, the evidence tends to show that Dorland was with the deceased or was following him around and being treated by deceased until he induced the deceased to leave Sheridan for the dance. Two of the witnesses stated that deceased did not want to go to the dance, that deceased said he was going on a long journey the next day, and that, apparently against his will, deceased was induced to get into the car with the Dorland party.

The fact that decedent had two one-hundred-dollar bills concealed in one of his shoes at the time of his death and that Dorland exhibited to the two boys two bills and said that they were one-hundred-dollar bills, together with Dorland's own admission and other testi-

mony of other witnesses, the details of which we shall make no attempt to relate, and the further fact, as shown by the state's witnesses, that but a day or so preceding the homicide Dorland had no money and had been refused credit at the store where he had been trading and that a few days after the homicide he was exhibiting to others and boasting of moneys which he had in his possession and which, under the evidence, he could have obtained in no other manner, were sufficient, if believed, to warrant the jury in finding that Dorland killed the decedent while Dorland was engaged in committing the crime of robbery. Whether Sipes was likewise guilty is a question not now before the court.

Based upon this testimony, the jury found that the defendant Dorland was guilty of the crime charged in the indictment and the evidence was sufficient to warrant such finding. There was no error, therefore, in overruling the motion for a directed verdict, nor was there any error in admitting any of the testimony to which we have referred, nor in the refusal of the court to withdraw the same from the consideration of the jury. The objection that evidence showing the money in the possession of the deceased on Friday, the day before the homicide was committed, was too remote was not well taken. The weight to be given to that evidence was a question for the jury.

Finding no error in the record, the judgment must be affirmed, and it is so ordered.

BELT, J., not sitting.