Argued and submitted October 3, 2008, affirmed July 29, petition for review allowed November 24, 2009 (347 Or 348)

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**MICHAEL JAMES BLAIR,**
*Defendant-Appellant.*

Lincoln County Circuit Court
042431; A130455

214 P3d 47

Andrew S. Chilton argued the cause for appellant. With him on the brief was Chilton, Ebbett & Galli, LLC.

Susan G. Howe, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

HASELTON, P. J.

## HASELTON, P. J.

Defendant appeals from a judgment of conviction for, *inter alia*, felony murder, ORS 163.115(1)(b), assigning error to the trial court's denial of defendant's demurrer and its refusal to give defendant's requested special jury instruction. Defendant contends that the trial court erred in both respects because the state failed to allege in the indictment, and the trial court failed to instruct the jury that it was required to find, that defendant must have acted with a culpable mental state of at least criminal negligence in causing the death of the victim. As explained below, we conclude that the felony murder statute, ORS 163.115(1)(b), does not require that the state allege and prove that the defendant acted with any particular culpable mental state in causing the death of the victim; rather, the defendant's commission or attempted commission of the predicate felony establishes, as a matter of law, the requisite *mens rea* with respect to the victim's death. Accordingly, we affirm.

The following facts are not in dispute. Sometime during the night of April 3 or the morning of April 4, 2004, defendant broke into the victim's home, robbed her of several green marijuana plants and various household items, and attempted to rape and sexually abuse her. The following evening the victim was found dead, lying face down on the floor next to her bed. Her long john pants had been pulled down to one ankle and her T-shirts had been pulled up to breast level. A bed sheet was tied around one of the victim's legs and then loosely tied to her bedpost.

The cause of the victim's death was determined to be chronic obstructive pulmonary disease (COPD) due to emphysema.[1] The victim suffered from severe COPD, which was acutely exacerbated by the burglary, attempted rape, and attempted sexual abuse, and ultimately led to her death.

Based on those events, a grand jury returned an indictment charging defendant with, *inter alia*, felony

---

[1] COPD is a reduction in the ability to exchange gases and oxygenate the blood. Symptoms include shortness of breath.

murder, ORS 163.115(1)(b) (Count 1).[2] That statute provides, in part:

"Except as provided in ORS 163.118 and 163.125, *criminal homicide constitutes murder*:

"* * * * *

"(b)  When it is committed by a person, acting either alone or with one or more persons, who commits or attempts to commit any of the following crimes and in the course of and in furtherance of the crime the person is committing or attempting to commit, or during the immediate flight therefrom, the person, or another participant if there be any, causes the death of a person other than one of the participants:

"* * * * *

"(C)  Burglary in the first degree as defined in ORS 164.225[.]"

(Emphasis added.)

The "criminal homicide" provisions are set out in ORS 163.005.[3] That statute provides, in part:

"(1)  A person commits criminal homicide if, without justification or excuse, the person *intentionally, knowingly, recklessly or with criminal negligence* causes the death of another human being.

"(2)  'Criminal homicide' is murder, manslaughter, criminally negligent homicide or aggravated vehicular homicide."

(Emphasis added.)

---

[2] Defendant was also charged with first-degree robbery (Count 2), third-degree robbery (Count 3), first-degree burglary (Count 4), attempted first-degree rape (Count 5), attempted first-degree sexual abuse (Count 6), two counts of delivery of a controlled substance (Counts 7 and 8), second-degree theft (Count 9), second-degree arson (Count 10), and possession of a controlled substance (Count 11). Counts 1 to 6 and Count 9 arose out of the events recounted above. Counts 7 and 8 arose out of defendant's alleged sale of the marijuana he stole from decedent's residence. Count 10 arose out of defendant's alleged burning of a stolen vehicle that contained items he obtained during the burglary. Count 11 arose out of defendant's alleged possession of methamphetamine that was discovered during the search of defendant's residence.

[3] The legislature amended ORS 163.005(2) in 2007 by adding the phrase "aggravated vehicular homicide." *See* Or Laws 2007, ch 867, § 4. Because that amendment does not affect our analysis in this case, all references to ORS 163.005 are to the current version of the statute.

As relevant here, the indictment alleged that defendant

"did unlawfully and intentionally commit the crime of Burglary in the First Degree, and in the course of, and in furtherance of, the crime which the defendant was committing, and attempting to commit, defendant caused the death of [the victim], a human being, who was not a participant in said crime."

Before trial, defendant demurred to the felony murder count. In particular, defendant asserted that "the facts stated do not constitute an offense," ORS 135.630(4), because they did not allege "that [defendant] acted with any mental state in connection with the death of the victim."

Defendant reasoned as follows: (1) Felony murder under ORS 163.115(1)(b) is a species of "criminal homicide"— that is, there can be no felony murder unless there is a "criminal homicide"; (2) a person can commit "criminal homicide" under ORS 163.005(1) only if he or she "intentionally, knowingly, recklessly or with criminal negligence causes the death of another human being"; and (3) thus, a defendant cannot be convicted of felony murder unless the state pleads and proves that the defendant caused the death of the victim with a culpable mental state of at least criminal negligence. In sum, defendant contended that the indictment failed to allege felony murder under ORS 163.115(1)(b) in this case because, although the indictment alleged that defendant had intentionally committed the predicate crime of burglary, it failed to allege that he had caused the death of the victim with a culpable mental state.

The state responded that the felony murder statute does not require that the state plead and prove that the defendant acted with any culpable mental state in connection with the death of the victim; rather, the state is required to plead and prove only that the defendant acted with a culpable mental state in committing, or attempting to commit, the underlying felony.

The trial court denied defendant's demurrer. The court explained its reasoning:

"Felony murder is a form of murder that is committed during the course of certain [enumerated] crimes, including burglary and robbery.

"\* \* \* \* \*

"If they didn't cause the death, then it's not felony murder. \* \* \* I don't think they have to double allege that it was intentional burglary along with an intentional, reckless, knowingly, or with criminal negligence [homicide]."

After the state's case-in-chief, defendant moved for a judgment of acquittal on the ground that the state had not offered evidence that defendant acted with a culpable mental state in causing the victim's death. The trial court denied defendant's motion.[4]

Before the case was submitted to the jury, defendant requested a special jury instruction that would, as pertinent here, have required the jury to find that defendant "knowingly, recklessly or with criminal negligence caused the death of [the victim]."[5] The trial court declined to give that instruction and did not instruct the jury that it must find that defendant acted with a culpable mental state in causing the victim's death. Rather, the court instructed the jury that it could convict defendant if it found, in addition to the other required

---

[4] Defendant does not assign as error on appeal the trial court's denial of defendant's motion for a judgment of acquittal.

[5] Defendant's requested special jury instruction read as follows:

"Oregon law provides that a person commits the crime of felony murder if that person, acting either alone or with one or more persons, commits the crime of burglary in the first degree and in the course of and in furtherance of the crime the person is committing, or during the immediate flight therefrom, the person, or another participant if there be any, causes the death of a person other than one of the participants in the crime.

"In this case, to establish the crime of felony murder, the state must prove beyond a reasonable doubt the following four elements:

"(1) The act occurred in Lincoln County, Oregon;

"(2) The act occurred on or about April 4, 2004;

"(3) [Defendant] either alone or with one or more persons, committed the crime of burglary in the first degree; and

"(4) In the course of and in furtherance of the crime of burglary in the first degree, which [defendant] was committing or attempting to commit, [defendant] *knowingly, recklessly or with criminal negligence* caused the death of [the victim], who was not a participant in the crime."

(Emphasis added.)

elements, that "[defendant] caused the death of [the victim]."[6]

Defendant timely excepted to that instruction, and to the court's failure to give his requested instruction. Defendant reiterated that the jury could not convict him of felony murder unless it found that he had acted with a culpable mental state in causing the victim's death. The jury ultimately found defendant guilty of felony murder.[7]

On appeal, defendant assigns error to the trial court's denial of his demurrer and its refusal to give his requested special jury instruction on felony murder. The parties primarily renew their contentions raised before the trial court.

Before turning to the particulars of the parties' contentions on appeal, it is important to understand the historical context of the applicable statutes—and, specifically, the felony murder rule embodied in ORS 163.115(1)(b). The legislature adopted ORS 163.005 and ORS 163.115 in 1971 as part of an overall revision of the criminal code. *See* Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report §§ 87-88, 84-85 (July 1970). "Criminal homicide" was a new offense created during the 1971 revision and, thus, had no preexisting history in Oregon law. *See* Commentary to Criminal Law Revision Commission

---

[6] The trial court instructed the jury as follows:

"Oregon law provides a person commits the crime of felony murder if that person, acting either alone or with some other person, commits or attempts to commit the underlying crime of burglary in the first degree and in the course and furtherance of the crime the person is committing and attempting to commit, or during the immediate flight therefrom, the person or other participant, if there be any, causes the death of a person other than one of the participants in the crime. In this case, to establish the crime of Felony Murder, the State must prove beyond a reasonable doubt the following elements: (1) That the act occurred in Lincoln County, Oregon; (2) The act occurred on/or about April 4, 2004; and (3) [Defendant], either alone, [or] with one or more persons, committed or attempted to commit the crime of Burglary in the First Degree; and (4) *In the course and furtherance of the crime of Burglary in the First Degree, which [defendant] was committing and attempting to commit, [defendant] caused the death of [the victim] who was not a participant in the crime.*"

(Emphasis added.)

[7] The jury convicted defendant on all charges except the second of the two counts of delivery of a controlled substance (Count 8), on which the jury was unable to reach a verdict.

Proposed Oregon Criminal Code, Final Draft and Report § 87(C), 84 (July 1970) (Commentary).

At the time that the 1971 omnibus revisions were adopted, the felony murder rule had been codified in Oregon for over a century. The felony murder rule was first codified in Oregon in 1864 as part of both the first-degree and second-degree murder statutes. *See* Or Laws 1864, ch 43, §§ 502-03. In 1864, the first-degree and second-degree murder statutes provided:

> "SEC. 502. If any person shall, purposely, and of deliberate and premeditated malice, *or in the commission or attempt to commit any rape, arson, robbery or burglary, kill another*, such person shall be deemed guilty of murder in the first degree.

> "SEC. 503. If any person shall purposely and maliciously, but without deliberation and premeditation, *or in the commission or attempt to commit any felony, other than rape, arson, robbery or burglary, kill another*, such person shall be deemed guilty of murder in the second degree."

General Laws of Oregon, Crim Code, ch XLIII, §§ 502-03, p 527 (Deady 1845-1864) (emphasis added).[8]

As early as 1879, the Supreme Court held that the felony murder provision of the first-degree murder statute did not require that the defendant act purposely in regard to killing the victim if the defendant killed the victim in the

---

[8] Before the 1971 omnibus revisions, the first-degree murder statute, including the felony murder provision, had been codified in the following statutes: *Former* ORS 163.010 (1953), *repealed by* Or Laws 1971, ch 743, § 432; OCLA § 23-401 (1940); Oregon Code, title XIV, ch II, § 14-201 (1930); Oregon Laws, title XIX, ch II, § 1893 (1920); Lord's Oregon Laws, title XIX, ch II, § 1893 (1910); The Codes and Statutes of Oregon, title XIX, ch II, § 1741 (Bellinger & Cotton 1901); The Codes and General Laws of Oregon, ch II, title II, § 1714 (Hill 1887); General Laws of Oregon, Crim Code, ch XLIII, § 502, p 527 (Deady 1845-1864); General Laws of Oregon, Crim Code, ch II, § 506, p 406 (Deady & Lane 1843-1872).

Before 1971, the second-degree murder statute, including the felony murder provision, had been codified in the following statutes: *Former* ORS 163.020 (1953), *repealed by* Or Laws 1971, ch 743, § 432; OCLA § 23-402 (1940); Oregon Code, title XIV, ch II, § 14-202 (1930); Oregon Laws, title XIX, ch II, § 1894 (1920); Lord's Oregon Laws, title XIX, ch II, § 1894 (1910); The Codes and Statutes of Oregon, title XIX, ch II, § 1742 (Bellinger & Cotton 1901); The Codes and General Laws of Oregon, ch II, title II, § 1715 (Hill 1887); General Laws of Oregon, Crim Code, ch XLIII, § 503, p 527 (Deady 1845-1864); General Laws of Oregon, Crim Code, ch II, § 507, p 406 (Deady & Lane 1843-1872).

commission or attempt to commit one of the felonies enumerated under that statute. *State of Oregon v. Brown*, 7 Or 186, 198 (1879). Rather, the court explained, the intent to kill was "incontrovertibly implied" from the state's proof of the defendant's participation in the felony and the death resulting from that participation. *Id.* at 204.

In *Brown*, the defendant, with two other persons, entered a pawnshop in Portland, assaulted the shop owner, and took items from his safe. *Id.* at 195. While attempting to escape, the defendant fired at an officer but missed; his bullet struck a tree, glanced off, and killed a little boy. *Id.* The defendant demurred to the indictment, arguing that it did not allege that the defendant acted purposely with respect to the death of the victim. *Id.* at 196-97. The defendant also requested a jury instruction that would have required the jury to find that it was " 'necessary that the killing be purposely done.' " *Id.* at 202. The trial court denied the demurrer and declined to give the requested instruction; the jury convicted the defendant and sentenced him to death. *Id.* at 197, 202.

The Supreme Court affirmed. The court first upheld the trial court's denial of the defendant's demurrer:

"In an indictment for murder in the first degree under our code it is necessary to allege that the killing was done purposely, and of deliberate and premeditated malice, except in cases where the killing was done in the commission or attempt to commit any rape, arson, robbery or burglary, in which cases it is not necessary to allege in the indictment that the killing was done either purposely or with deliberate and premeditated malice. * * *

"When a homicide takes place in the commission of a robbery it is not necessary, in order to constitute murder in the first degree, that the one perpetrating it should purposely kill the person slain, and where purpose is not required to constitute the crime it need not be alleged in the indictment."

*Id.* at 198. The Supreme Court also sustained the trial court's denial of the defendant's requested jury instruction and affirmed the court's instruction to the jury as follows:

" 'Under this indictment it is not necessary to prove expressly either a purpose to kill, or deliberate and premeditated malice. The indictment having alleged the killing in the perpetration of a robbery, it is only required that the robbery and the killing, in the manner alleged, during the robbery, be proven to make out the case. In such a case, and under such proof, *the intent to kill and the deliberate and premeditated malice are incontrovertibly implied.*' "

*Id.* at 204 (emphasis added). The Supreme Court explained its reasoning:

"The defendant was accused in the indictment of having killed [the victim] in the commission of a robbery, and if the evidence given on the trial satisfied the jury beyond a reasonable doubt that such was the fact, then no purpose or intention to kill was required to be proven in order to constitute murder in the first degree."

*Id.* at 202.

Following *Brown*, Oregon courts consistently construed the felony murder rule, incorporated in both the first- and second-degree murder statutes, to contain no distinct or independent *mens rea* requirement in relation to the death of the victim.[9] *See, e.g.*, *State v. Branch*, 244 Or 97, 100, 415 P2d 766 (1966) ("[A] malignant purpose is established by proof of the defendant's other felony * * *."); *State v. Dorland*, 161 Or 403, 404, 89 P2d 595 (1939) ("[I]t is not necessary for the indictment to allege or the state to prove that [the killing] was done purposely or with deliberate and premeditated malice. It is sufficient if it be alleged and proved that the killing was done while the defendant was engaged in the commission or attempt to commit any of [the enumerated felonies][.]"); *State v. Morris*, 83 Or 429, 445, 163 P 567 (1917) (affirming correctness of instruction that, if the state proves that the defendant committed larceny, "the intent to kill is implied").

---

[9] Although the legislature amended both the first-degree and second-degree murder statutes in 1951 and 1953 to add additional subsections, *see* Or Laws 1951, ch 179, § 1; *former* ORS 163.010; *former* ORS 163.020, the relevant portions of those statutes remained substantially unchanged until the criminal code revisions in 1971.

Those holdings comported with the overarching purpose of the felony murder rule—that is, "to relieve the state of the burden of proving premeditation or malice whenever the victim's death [was] caused by the killer while the killer [was] committing another felony." *Branch*, 244 Or at 99-100. Consistently with that purpose, even deaths that were caused accidentally during the commission or attempt to commit a felony constituted murder under the felony murder rule. *See, e.g., State v. Wilson*, 182 Or 681, 691-92, 189 P2d 403 (1948) (holding that the accidental discharge of the defendant's gun during the commission of a robbery constituted first-degree murder under the felony murder rule).

In short, as of the time the legislature adopted the 1971 criminal code, including ORS 163.115(1)(b), Oregon's long-established felony murder rule operated to impose liability for all homicides occurring during the perpetration or attempted perpetration of a felony without the necessity of proving the relation between the homicide and the defendant's state of mind. Rather, the defendant's commission of or attempt to commit the predicate felony established as a matter of law the requisite *mens rea* with respect to the causation of the victim's death. *See, e.g., Morris*, 83 Or at 445.[10]

We will address the legislative history of ORS 163.115(1)(b) in detail below, but it bears present, preliminary emphasis that nothing in that 1971 legislative history suggests that the legislature intended to change the "incontrovertibly implied intent" feature of Oregon's felony murder rule as consistently judicially applied for over a century. Rather, the legislative history reveals the opposite. Further,

---

[10] Moreover, both historically, and as presently codified in ORS 163.115(1)(b), Oregon law imposes liability for felony murder even when the death of the victim is not caused by the defendant personally, but, rather, by the defendant's accomplice, during the commission or attempted commission of a joint felony. *See, e.g., State v. Jensen*, 209 Or 239, 260, 296 P2d 618 (1957) ("[I]t is immaterial whether the defendant * * * or his codefendant * * * actually delivered the blows which killed [the victim]. There was 'a union of criminal intent' of [the defendant] and [his codefendant] to commit the crime of robbery * * *."); *see also* ORS 163.115(1)(b) (imposing liability if "another participant" in the commission or attempted commission of an enumerated felony causes the death of the victim); ORS 163.115(3) (establishing an affirmative defense to the charge of felony murder under certain circumstances where the death is personally caused by the conduct of the coperpetrator of the underlying felony).

for the last 38 years, since 1971, Oregon courts—albeit without expressly addressing the particular arguments now presented for our consideration—have continued to treat felony murder as requiring no distinct or independent *mens rea* with respect to causation of the victim's death. *See, e.g., State v. Quinn*, 290 Or 383, 405 n 8, 623 P2d 630 (1981), *overruled on other grounds by State v. Hall*, 339 Or 7, 115 P3d 908 (2005) (under ORS 163.115(1)(b), "the jury need only find the intent necessary for burglary, intent to kill is not an element of felony murder"); *State v. Burnell*, 129 Or App 105, 109, 877 P2d 1228 (1994) ("The felony murder statute * * * requires an intent to commit the underlying felony, but has no *mens rea* causation of death requirement."); *State v. Sparklin*, 61 Or App 608, 611, 658 P2d 571, *aff'd*, 296 Or 85, 672 P2d 1182 (1983) ("The implied malice in the felony murder concept has been recognized in the common law and now legislatively to be an appropriate method of establishing the culpable mental state for intentional homicide.").

Against that backdrop, we turn to the substance of the parties' contentions on appeal: Did the 1971 criminal code so alter Oregon's felony murder rule as to abrogate the imputed *mens rea* feature, thereby requiring the state to plead and prove that the defendant acted with a distinct *mens rea* with respect to causing the death of the victim?

The answer lies in the proper construction and application of ORS 163.115(1)(b), and, particularly, its proper interrelationship with the "criminal homicide" provisions contained in ORS 163.005(1) and (2). Accordingly, we apply the principles of statutory construction explained in *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009), beginning with the text in context. After examining the text and context, even if we do not perceive an ambiguity in the statute's text, we will consult legislative history that has been proffered by a party where that legislative history appears useful to our analysis. ORS 174.020(3); *Gaines*, 346 Or at 172.

Defendant, as noted, contends that the legislature fundamentally altered the felony murder rule when it revised the criminal code in 1971, so as to require the state to plead and prove that, in causing the victim's death, the defendant acted with a culpable *mens rea* distinct and independent

from the *mens rea* pertaining to the defendant's commission or attempted commission of the predicate felony.[11] That proposition rests on the combination of two features of the 1971 legislation that continue to be embodied in the current statute. First, ORS 163.005, the general "criminal homicide" statute, which had no direct antecedent in Oregon homicide laws, provides, in part:

"(1) A person commits criminal homicide if, without justification or excuse, the person *intentionally, knowingly, recklessly or with criminal negligence* causes the death of another human being.

"(2) 'Criminal homicide' is murder, manslaughter, criminally negligent homicide or aggravated vehicular homicide."

(Emphasis added.) Second, ORS 163.115, the general murder statute, which includes the felony murder provision, provides, in part:

"(1) Except as provided in ORS 163.118 and 163.125, *criminal homicide constitutes murder*:

"* * * * *

"(b) When it is committed by a person, acting either alone or with one or more persons, who commits or attempts to commit any of the following crimes and in the course of and in furtherance of the crime the person is committing or attempting to commit, or during the immediate flight therefrom, the person, or another participant if there be any, causes the death of a person other than one of the participants:

"* * * * *

"(C) Burglary in the first degree as defined in ORS 164.225[.]"

(Emphasis added.) Defendant, invoking the emphasized aspects of those statutes, asserts that (1) felony murder is a

---

[11] As noted, *see* 230 Or App at 46 n 10, a defendant may be liable for felony murder even if the death of the victim is caused by a defendant's accomplice. *See* ORS 163.115(1)(b). Thus, to be precise, the proper issue is not whether the felony murder statute requires a defendant to act with an independent and distinct *mens rea* in causing the death of the victim, but, rather, whether it requires a defendant—*or his or her accomplice*—to act with an independent and distinct *mens rea* in causing the death of the victim. However, for readability purposes, we refer only to "the defendant" in our discussion of the issue.

type of "criminal homicide"; (2) to constitute "criminal homicide," the defendant must cause the death of the victim with a *mens rea* of at least criminal negligence as to that death; and (3) consequently, a defendant cannot commit felony murder unless the defendant acts with at least criminal negligence in causing the death of the victim in the course of and in furtherance of the predicate felony that the defendant committed or attempted to commit.

The state responds that the 1971 legislature intended to adhere to Oregon's long-established formulation of felony murder. The state emphasizes that the text of ORS 163.115(1)(b) is devoid of any language of any distinct, independent *mens rea* requirement in connection with causing the death of the victim. Further, the state notes that the statute does not require the defendant to have *personally* caused the death of the victim, *viz.*, a defendant may be criminally liable under ORS 163.115(1)(b) even if an accomplice or co-felon causes the death of the victim. Thus, the state posits, the legislature did not intend for the defendant to act with a particular *mens rea* with respect to the victim's death in order to be held accountable for felony murder.

The state further remonstrates that the criminal homicide provisions in ORS 163.005(1) and (2) do not support defendant's contentions. According to the state, although subsection (1) provides that a person commits criminal homicide if the person "intentionally, knowingly, recklessly or with criminal negligence" causes the death of another human being, nothing in that statute mandates that those are the *only* ways to commit criminal homicide—*viz.*, the legislature did not intend subsection (1) to be the exclusive means of committing criminal homicide. In support of that contention, the state argues that subsection (2) defines "criminal homicide" to include "murder" and, accordingly, any of the subspecies of murder listed in ORS 163.115(1) and, specifically, ORS 163.115(1)(b), constitute "criminal homicide" regardless of whether the particular murder statute requires that a defendant act with a culpable mental state with respect to the victim's death.[12]

---

[12] In response to the latter argument, defendant contends that ORS 163.005(1) defines the requisite elements of "criminal homicide," while subsection (2), rather than further or alternatively defining "criminal homicide," merely breaks that general category of culpable conduct into specific subspecies, roughly corresponding to

■    The parties' contending constructions of the statutes are both plausible. As we have consistently emphasized, the threshold of "plausibility"—and, thus, of statutory ambiguity—is undemanding. *See Godfrey v. Fred Meyer Stores*, 202 Or App 673, 686, 124 P3d 621 (2005), *rev den*, 340 Or 672 (2006) ("[T]he threshold of ambiguity is a low one. It does not require that competing constructions be equally tenable. It requires only that a competing construction not be 'wholly implausible.' " (quoting *Owens v. MVD*, 319 Or 259, 268, 875 P2d 463 (1994)).

There is, to be sure, a straightforward syllogistical appeal to defendant's proposed construction. Most simply: Felony murder is a species of "murder"; murder is a species of "criminal homicide"; "criminal homicide" requires that a defendant act with a culpable *mens rea* in causing the victim's death; therefore, a defendant cannot be guilty of felony murder unless the defendant acted with a culpable mental state with respect to the causation of the victim's death.

Conversely, and particularly given the context of the historical application and development of the felony murder doctrine in Oregon, the state's proposed construction is also plausible. Unlike other provisions of the murder statute, ORS 163.115, which expressly refer to a culpable mental state—*see, e.g.*, ORS 163.115(1)(a) (criminal homicide constitutes murder when it is committed "intentionally"), ORS 163.115(1)(c) (murder "[b]y abuse" when the death is, *inter alia*, caused "recklessly under circumstances manifesting extreme indifference to the value of human life")—the felony murder provision, ORS 163.115(1)(b), includes no express *mens rea* requirement. Viewed in the context of the historical understanding of the felony murder rule in Oregon, it is not "wholly implausible" that that omission was deliberate. That is, no distinct culpable mental state was specified because the requisite *mens rea* as to causing the victim's death is imputed, as a matter of law, from the defendant's commission or attempted commission of the predicate felony.

---

"degrees": *i.e.*, murder, manslaughter, criminally negligent homicide, and aggravated vehicular homicide, each of which necessarily satisfies the definitional prerequisites of subsection (1).

Because it appears useful to our analysis, we turn to the parties' proffered legislative history. *Gaines*, 346 Or at 172.[13] As noted, ORS 163.005 and ORS 163.115 were enacted as part of the 1971 Legislative Assembly's comprehensive revision of Oregon's criminal code. That revision began with the creation, in 1967, of the Criminal Law Revision Commission. *State v. Garcia*, 288 Or 413, 416, 605 P2d 671 (1980) (describing history of 1971 criminal code revision). As the Supreme Court recently reiterated:

> " 'The Commission divided responsibility for drafting the revised criminal code among three subcommittees. Those subcommittees produced drafts of the code and submitted those drafts, together with commentaries on them, to the Commission, which produced a final draft of the proposed code and presented the final draft and commentary to the legislature. This court has looked to both the commentary and the discussions that preceded the adoption of the final draft as legislative history for the resulting laws.' "

*Gaines*, 346 Or at 178 (quoting *State v. Lonergan*, 344 Or 15, 25 n 3, 176 P3d 374 (2008) (Kistler, J., dissenting)).

The commentary to the final draft of what would later become ORS 163.005 explained that subsection (1) is a definitions section meant to "trace the limits of the homicide provisions of the Code." Commentary § 87(A), at 84; *see also* Minutes, Criminal Law Revision Commission, Jan 23, 1970, 2 ("[S]ubsection (1) * * * established the limits of the homicide provisions * * *."). The Commission set that limit at criminal negligence. Commentary § 87(A), at 84 (" '[M]ere' or 'civil' negligence will not constitute criminal homicide."). In contrast, ORS 163.005(2), rather than defining the scope of "criminal homicide," broke "criminal homicide" into three species: murder, manslaughter, and criminally negligent homicide.[14] *Id.*

---

[13] Although we are not required to find an ambiguity in the text of the statute as a necessary predicate to considering pertinent legislative history, *Gaines*, 346 Or at 171-72, we note that the applicable statutes in this case are ambiguous nonetheless. *See Owens*, 319 Or at 268 (statutes that are capable of multiple constructions that are not "wholly implausible" are ambiguous).

[14] As noted, 230 Or App at 39 n 3, subsection (2) was later amended to add a fourth species—aggravated vehicular homicide. *See* Or Laws 2007, ch 867, § 4.

That legislative history substantiates defendant's understanding of the proper operation of, and interplay between, ORS 163.005(1) and (2). *See* 230 Or App at 49-50 n 12. That is, subsection (1) is a definition section prescribing the common requisites of all types of criminal homicide, including felony murder as a subspecies of murder, and subsection (2) does not function as a sort of alternative definitional provision.

The question remains, however: What was, and is, the effect of ORS 163.005 on the operation of the felony murder rule, as codified at ORS 163.115(1)(b)? The legislative history of the latter is patent that the legislature did not intend to abrogate the historical "imputed *mens rea*" feature of Oregon's felony murder rule.

The commentary to the final draft of what would later become ORS 163.115(1)(b) states that the Commission, in revising the felony murder statute, intended to "continue[ ] to recognize the felony-murder doctrine but make[ ] important changes in it." Commentary § 88(A), at 85. Those changes were limited to (1) dispensing with the degrees of murder, (2) limiting liability for felony murder to enumerated felonies, and (3) adding an affirmative defense derived from a similar provision in New York's felony murder statute.[15] *Id.* § 88(C), at 86-87.

The circumstances of the Commission's endorsement, and the legislature's ultimate enactment, of the affirmative defense derived from New York law in lieu of the

---

[15] As discussed earlier, 230 Or App at 46 n 10, the affirmative defense enacted by the 1971 legislature is still in effect as ORS 163.115(3). That statute provides:

"It is an affirmative defense to a charge of violating subsection (1)(b) of this section that the defendant:

"(a) Was not the only participant in the underlying crime;

"(b) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid in the commission thereof;

"(c) Was not armed with a dangerous or deadly weapon;

"(d) Had no reasonable ground to believe that any other participant was armed with a dangerous or deadly weapon; and

"(e) Had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death."

Model Penal Code's far more radical revisions of the traditional felony murder formulation are conclusive of legislative intent. Consequently, we recount those circumstances in detail.

The Commission rejected the Model Penal Code's treatment of felony murder in favor of the policy approach and language of New York Revised Penal Law § 125.25(3) (1967). The Model Penal Code's felony murder statute required that the defendant cause the death of the victim "recklessly under circumstances manifesting extreme indifference to the value of human life," with a rebuttable presumption that the defendant acted with such recklessness and indifference if the defendant was engaged or was an accomplice in the commission of or attempt to commit a felony. *See* II Model Penal Code and Commentaries § 210.2(1)(b), 13 (1980) (Model Penal Code).[16] By requiring a minimum culpable mental state of recklessness as to causing the death of the victim, the Model Penal Code "abandon[ed] felony murder as a separate basis for establishing liability for homicide." *See id.* § 210.2, comment 6 at 30.

New York, on the other hand, took a less "liberal" approach to the felony murder doctrine. The New York statute retained the historical feature of imputing *mens rea* with respect to the victim's death from the defendant's commission or attempted commission of the predicate felony, *see, e.g.*, *People v. Hernandez*, 82 NY 2d 309, 317, 624 NE 2d 661, 665 (NY 1993) ("[T]he *mens rea* of the underlying felony is imputed to the participant responsible for the killing * * *." (citing *People v. Wood*, 8 NY 2d 48, 51, 167 NE 2d 736, 738 (NY 1960)), but created an affirmative defense that could be raised by the defendant under certain circumstances when

---

[16] Model Penal Code § 210.2(1)(b) (Proposed Official Draft 1962) provided:

"Except as provided in Section 210.3(1)(b), criminal homicide constitutes murder when:

"(b) it is committed recklessly under circumstances manifesting extreme indifference to the value of human life. Such recklessness and indifference are presumed if the actor is engaged or is an accomplice in the commission of, or an attempt to commit, or flight after committing or attempting to commit robbery, rape or deviate sexual intercourse by force or threat of force, arson, burglary, kidnapping or felonious escape."

the death was caused by a co-felon. *See* New York Revised Penal Law § 125.25(3) (1967).[17] New York's policy approach in adopting an affirmative defense was

> "based upon the theory that the felony murder doctrine, in its rigid automatic envelopment of all participants in the underlying felony, may be unduly harsh in particular instances; and that some cases do arise, rare though they may be, where it would be just and desirable to allow a non-killer defendant of relatively minor culpability a chance of extricating himself from liability for murder * * *."

Commentary § 88(C), at 87 (quoting Richard G. Denzer and Peter McQuillan, Practice Commentary, McKinney's Consolidated Laws of NY, Book 39, Penal Law § 125.25, 237 (1967)).

The Commission's adoption of New York's approach to felony murder was a "novel change" in that, while retaining the fundamental "imputed intent" feature of the traditional formulation, it qualified that feature by "extend[ing] a defense to the felony-murder doctrine" under Oregon law. Commentary § 88(C), at 87. That affirmative defense, codified at ORS 163.115(3), "follow[ed] the modern trend away from the common law felony-murder rule pursuant to which

---

[17] New York Revised Penal Law § 125.25 (1967) provided, in part:

"A person is guilty of murder when:

"3. Acting either alone or with one or more other persons, he commits or attempts to commit robbery, burglary, kidnapping, arson, rape in the first degree, sodomy in the first degree, sexual abuse in the first degree, escape in the first degree, or escape in the second degree, and, in the course of and in furtherance of such crime or of immediate flight therefrom, he, or another participant, if there be any, causes the death of a person other than one of the participants; except that in any prosecution under this subdivision, in which the defendant was not the only participant in the underlying crime, it is an affirmative defense that the defendant:

"(a) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and

"(b) Was not armed with a deadly weapon, or any instrument, article or substance readily capable of causing death or serious physical injury and of a sort not ordinarily carried in public places by law-abiding persons; and

"(c) Had no reasonable ground to believe that any other participant was armed with such a weapon, instrument, article or substance; and

"(d) Had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

almost any killing occurring during the commission of some other felony renders all participants in the underlying crime guilty also of murder." Commentary § 88(C), at 87.

Professor George M. Platt of the University of Oregon School of Law, one of the authors of the Code, *see State v. Reams*, 292 Or 1, 9, 636 P2d 913 (1981), explained that the proposed draft rejected the Model Penal Code's abrogation of the felony murder rule in favor of New York's "less liberal" approach. Tape Recording, Criminal Law Revision Commission, Subcommittee No 2, Oct 22, 1969, Tape 85, Side 1 (statement of Professor George M. Platt, University of Oregon School of Law). Professor Platt explained that the availability of an affirmative defense was important due to the harsh nature of the felony murder rule:

> "I think it should be a part of the homicide and certainly the murder statute because *we have approached the outer limits of the* mens rea *requirements with respect to murder in the felony-murder doctrine. In effect what we have is strict liability* when one who sets out to commit a lesser felony with no *mens rea*—with no mental element of intending to kill anyone—winds up as a murderer. *Now that in most cases will still continue to be the case because of the way we've got it drafted* but there will be a door through which the very unusual defendant will be able to exit from the charge of murder."

Tape Recording, Criminal Law Revision Commission, Subcommittee No 2, Nov 14, 1969, Tape 87, Side 1 (statement of Professor Platt) (emphasis added).

In sum, the Commission's proposed approach, which the legislature adopted, was to continue to follow the existing "imputed *mens rea*" formulation with the sole qualification of the circumstantially limited affirmative defense, under which a defendant bears the burden of proving five cumulative elements. *See* ORS 163.115(3)(a) - (e).

■ The legislative history of the 1971 criminal code, specifically ORS 163.005(1) and ORS 163.115(1)(b), shows that the enactment of the former was not intended to impose a requirement that a distinct and independent *mens rea* with respect to the causation of the death be pleaded and proved under the latter. Rather, the two provisions can, and must, be

harmonized in such a way that (1) under ORS 163.005(1), all types of "criminal homicide" require that a defendant act with a culpable *mens rea* with respect to causing the victim's death; and (2) for that particular subspecies of criminal homicide that is "felony murder," the requisite culpable *mens rea* pertaining to the death is established, as a matter of law,[18] by the defendant's commission or attempted commission of the predicate felony.[19]

Given that understanding of the applicable statutes, the trial court did not err either in denying defendant's demurrer to the felony murder charge or in declining to give defendant's requested jury instruction.

Affirmed.

---

[18] Subject to the affirmative defense described in ORS 163.115(3).

[19] New Jersey's criminal homicide and felony murder statutes work together in a manner similar to Oregon's. *See* NJSA 2C:11-2, 3(a)(3) (containing a general definition of criminal homicide with a minimum *mens rea* of "recklessly" and incorporating that definition into its felony murder statute with the phrase "criminal homicide constitutes murder when * * *."). New Jersey courts have interpreted its felony murder statute as not requiring any *mens rea* (apart from that imputed by virtue of the commission of or attempt to commit the underlying felony) in connection with causing the death of the victim. *See, e.g., State v. Arenas*, 363 NJ Super 1, 8, 830 A2d 502, 506 (2003), *rev den*, 178 NJ 452, 841 A2d 90 (2004) ("[T]he intent required to support a conviction for felony murder is the intent to commit the predicate felony."). *But see* Paul H. Robinson, 1 *Criminal Law Defenses* § 104, 506 (1984) (expressing view, contrary to that of New Jersey's courts, that "New Jersey may have inadvertently short-circuited the felony-murder rule, rendering its no-culpability-as-to-the-killing defense to felony murder superfluous").