Argued and submitted February 22, at Jesuit High School, Portland, Oregon,
decision of Court of Appeals and judgment of circuit court affirmed
March 25, 2010

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## MICHAEL JAMES BLAIR,
*Petitioner on Review.*

(CC 042431; CA A130455; SC S057796)

228 P3d 564

Andrew S. Chilton, Chilton & Galli, LLC, Portland, argued the cause and filed the briefs for petitioner on review.

Susan G. Howe, Senior Assistant Attorney General, Salem, argued the cause for respondent on review. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

DE MUNIZ, C. J.

**DE MUNIZ, C. J.**

Defendant petitions for review from a Court of Appeals opinion affirming his conviction for, among other crimes, felony murder.[1] The Court of Appeals concluded that the felony murder statute, ORS 163.115(1)(b), does not require that the state allege and prove that a defendant acted with a culpable mental state in causing the victim's death; rather, the defendant's commission or attempted commission of the underlying felony establishes, as a matter of law, the requisite *mens rea* with respect to the victim's death. *State v. Blair*, 230 Or App 36, 56, 214 P3d 47 (2009). We allowed defendant's petition for review. As explained below, we agree with the Court of Appeals and the trial court, and therefore, affirm.

The facts are undisputed. Defendant broke into the victim's home, stole several marijuana plants and household items, and attempted to rape and sexually abuse the victim. The next day, the victim's son found her body on the floor next to her bed, with a bed sheet tied around one of her legs and also loosely tied to a bedpost. The cause of the victim's death was chronic obstructive pulmonary disease (COPD) due to emphysema. The victim suffered from acute COPD, which was exacerbated critically by defendant's burglary, attempted rape, and attempted sexual abuse.

Before trial, defendant demurred to the felony murder count in the indictment. Defendant argued that the demurrer should be sustained, because the felony murder count did not allege that defendant had caused the death of the victim with a culpable mental state and therefore did not allege facts "constitut[ing] an offense." *See* ORS 135.630(4) (defendant may demur to accusatory instruction when "the facts stated do not constitute an offense").

Defendant argued that, because felony murder is a form of criminal homicide, the state was required to allege in the indictment one of the mental states described in ORS 163.005(1): that is, it was required to allege that defendant had killed the victim "intentionally, knowingly, recklessly or with criminal negligence[.]" The trial court overruled the

---

[1] Defendant's other convictions are not at issue on review.

demurrer. During the trial, defendant submitted proposed jury instructions that would have required the state to prove beyond a reasonable doubt that defendant had caused the victim's death "knowingly, recklessly, or with criminal negligence" as one of the elements of felony murder. The trial court refused to give those requested instructions. A jury subsequently convicted defendant of felony murder, among other crimes. On the felony murder conviction, the trial court imposed a life sentence with the possibility of parole after 25 years.

Defendant appealed, and the Court of Appeals affirmed. *Blair*, 230 Or App 36. The Court of Appeals acknowledged some ambiguity in the relevant statutes, but held that their text, context, and legislative history supported the interpretation that felony murder, as defined in Oregon, does not require a separate mental state. The Court of Appeals pointed out that the concept of felony murder was first codified in 1864 and that long-standing case law from this court discussing felony murder never had required that a specific mental state attend the cause of death of the victim; instead, the *mens rea* element was satisfied by the commission of certain underlying felonies. The Court of Appeals also noted that the statutes relied on by defendant were part of the 1971 revision of the criminal code and that nothing in the legislative history suggested that the legislature intended to alter the longstanding felony murder rule. Accordingly, the Court of Appeals concluded that the trial court had not erred. *Id.* at 56.

■ We allowed defendant's petition for review to determine whether the definition of criminal homicide in ORS 163.005(1) applies to felony murder, as codified in ORS 163.115(1)(b), in such a way that felony murder in Oregon requires the state to allege and prove that a defendant acted with a mental state in causing the victim's death distinct from any mental state required to prove the underlying felony. In doing so, our task is to "ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all." ORS 174.010. We interpret the statutory text in context,

*PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P3d 1143 (1993), and then, to the extent we find it helpful, we consider the legislative history proffered by the parties. ORS 174.020(3); *see also State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (after considering text and context, court considers any pertinent legislative history, giving it appropriate weight). In this case, the context that we consider along with the text includes the law as it existed before the adoption of the 1971 criminal code. *See State v. Toevs*, 327 Or 525, 532, 964 P2d 1007 (1998) (context of a statute includes this court's prior interpretations of the same statute or earlier versions of that statute).

ORS 163.005 provides, in part:

"(1)   A person commits criminal homicide if, without justification or excuse, the person intentionally, knowingly, recklessly or with criminal negligence causes the death of another human being.

"(2)   'Criminal homicide' is murder, manslaughter, criminally negligent homicide or aggravated vehicular homicide."

The felony murder statute, ORS 163.115, provides, in part:

"(1)   Except as provided in ORS 163.118 and 163.125, criminal homicide constitutes murder:

"* * * * *

"(b)   When it is committed by a person, acting either alone or with one or more persons, who commits or attempts to commit any of the following crimes and in the course of and in furtherance of the crime the person is committing or attempting to commit, or during the immediate flight therefrom, the person, or another participant if there be any, causes the death of a person other than one of the participants:

"* * * * *

"(C)   Burglary in the first degree as defined in ORS 164.225[.]"

As defendant reads the above statutes, because felony murder is a type of criminal homicide—and, under ORS 163.005(1), a person commits criminal homicide only if the

person intentionally, knowingly, recklessly, or with criminal negligence causes the death of another—felony murder requires that, in causing the death, the defendant acted with a *mens rea* of at least criminal negligence. The state responds that ORS 163.005(1) does not provide the exclusive definition of criminal homicide because ORS 163.005(2) provides a further definition of criminal homicide and, under defendant's reading, subsection (2) would be rendered superfluous. Moreover, the state argues, under ORS 163.005(2), "criminal homicide" includes "murder." Accordingly, all the subspecies of murder listed in ORS 163.115(1) constitute "criminal homicide," regardless of whether the specific subspecies requires that a defendant act with a culpable mental state in causing the victim's death. The state asserts that nothing in ORS 163.005(1) prevents the *mens rea* required to prove the underlying felony from being imputed to the person who causes the death of a victim for purposes of ORS 163.115(1)(b). With those competing arguments in mind, we turn to an examination of the pertinent statutes.

The legislature adopted ORS 163.005 and ORS 163.115 in 1971 as part of an overall revision of the criminal code. Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report §§ 87-88, 84-85 (July 1970). "Criminal homicide" was a new offense created during the 1971 revision and thus had no preexisting history in Oregon law. *See* Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 87(C), 84 (July 1970) (Commentary) (setting out definition). On the other hand, the felony murder rule was first codified in Oregon in 1864 as part of both the first- and second-degree murder statutes. Or Laws 1864, ch 43, §§ 502-03.[2] The relevant portions of the first- and second-degree

---

[2] Sections 502 and 503 provided:

"If any person shall, purposely, and of deliberate and premeditated malice, *or in the commission or attempt to commit any rape, arson, robbery or burglary,* kill another, such person shall be deemed guilty of murder in the first degree.

"If any person shall purposely and maliciously, but without deliberation and premeditation, *or in the commission or attempt to commit any felony, other than rape, arson, robbery or burglary,* kill another, such person shall be deemed guilty of murder in the second degree."

General Laws of Oregon, Crim Code, ch XLIII, §§ 502-03, p 527 (Deady 1845-1864) (emphasis added).

felony murder statutes remained substantially unchanged until the criminal code revisions in 1971, and this court has consistently incorporated an "implied malice" rule into felony murder, that is, felony murder contains no distinct or independent *mens rea* requirement in relation to the cause of death of the victim. *See State of Oregon v. Brown*, 7 Or 186, 198, 204 (1879) (first-degree murder statute did not require defendant to act purposely in killing victim if defendant killed victim in commission or attempted commission of felonies enumerated in statute; intent to kill "incontrovertibly implied" from defendant's participation in felony); *State v. Branch*, 244 Or 97, 100, 415 P2d 766 (1966) ("[A] malignant purpose is established by proof of the defendant's other felony * * *."); *State v. Dorland*, 161 Or 403, 404, 89 P2d 595 (1939) ("[I]t is not necessary for the indictment to allege or the state to prove that [the killing] was done purposely or with deliberate and premeditated malice. It is sufficient if it be alleged and proved that the killing was done while the defendant was engaged in the commission or attempt to commit any of [the enumerated felonies][.]").

Thus, when the legislature adopted ORS 163.005 and ORS 163.115 in 1971, the felony murder rule, as construed and applied by this court, long had operated to impose responsibility for homicides that occur during the commission or attempted commission of a felony, without the separate and additional requirement that the defendant acted with a *mens rea* in causing the death of another person. In addition, since 1971, this court has continued to treat felony murder as requiring no distinct or independent *mens rea* with respect to the cause of the victim's death. *See State v. Link*, 346 Or 187, 205, 208 P3d 936 (2009) ("[A] defendant may be convicted of felony murder even though the defendant did not participate in the murder, cause the death, or intend that the death occur. * * * [I]f a participant in a felony also participates in and causes a murder, and does so intentionally, then the participant commits intentional murder, as well as felony murder."); *State v. Zweigart*, 344 Or 619, 626, 188 P3d 242 (2008), *cert den*, ___ US ___ , 130 S Ct 56 (2009) ("[C]riminal homicide constitutes murder when * * * a person participates in one of certain enumerated felonies and, in the course of that felony, that person, or any other

person, causes the death of another person, whether intentionally or not[.]"); *State v. Quinn*, 290 Or 383, 405 n 8, 623 P2d 630 (1981), *overruled on other grounds by State v. Hall*, 339 Or 7, 115 P3d 908 (2005) (under ORS 163.115(1)(b), "the jury need only find the intent necessary for burglary, intent to kill is not an element of felony murder").

■ Nothing in ORS 163.115 or any related statutes indicates that the legislature intended to change that long-standing rule. To the contrary, other aspects of the statutory scheme demonstrate that the legislature intended to retain the felony murder rule in its traditional form. For example, ORS 163.115(1)(b) provides that criminal homicide constitutes murder by a person when it is committed by that person *"or another participant if there be any."* (Emphasis added.) Under that provision, a defendant may be criminally liable for felony murder even if an accomplice causes the death of the victim. Another subsection in the same statute, ORS 163.115(3), provides for a limited affirmative defense to felony murder if a defendant

"(a) Was not the only participant in the underlying crime;

"(b) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid in the commission thereof;

"(c) Was not armed with a dangerous or deadly weapon;

"(d) Had no reasonable ground to believe that any other participant was armed with a dangerous or deadly weapon; and

"(e) Had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death."

Under defendant's interpretation of the felony murder statute, ORS 163.115(3) would be rendered unnecessary, in contravention of the statutory construction directive set out in ORS 174.010.

Moreover, ORS 163.115(1)(a) provides that criminal homicide constitutes murder when it is "committed *intentionally*." (Emphasis added.) Under a parallel reading of ORS

163.115(1)(a) and (b), the fact that the legislature included a mental state in paragraph (1)(a) but not (1)(b) supports the interpretation that the legislature intended that the mental state required for the underlying felony in paragraph (1)(b) to be imputed as a matter of law to the cause of the death of the victim.

■       Finally, as the Court of Appeals noted, nothing in the 1971 legislative history suggests that the legislature intended to change the longstanding rule regarding implied malice; in fact, much the legislative history suggests that the legislature intended to adhere to it. *See Blair*, 230 Or App at 51-55 (summarizing that history). Indeed, defendant does not assert that anything in the legislative history of the two statutes supports its position; rather, defendant asserts that his reading of the statutes is the only plausible interpretation and therefore that any resort to legislative history is unnecessary. As explained above, we disagree that defendant's interpretation is the only plausible one. In all events, we may always consider pertinent legislative history. *Gaines*, 346 Or at 172.

■ ■       Taken together, the context, including this court's case law and the legislative history, compel the conclusion that the legislature intended to continue the implied malice rule. Accordingly, we conclude that, (1) under ORS 163.005(1), "criminal homicide" requires that a defendant act with a culpable *mens rea* with respect to causing the victim's death; (2) under ORS 163.005(2), "criminal homicide" includes "murder," and (3) under ORS 163.115(1)(b), requisite culpable *mens rea* is established, as a matter of law, by the defendant's commission or attempted commission of the predicate felony. Thus, the trial court properly overruled defendant's demurrer and properly refused to give defendant's requested jury instruction. The Court of Appeals correctly affirmed the trial court's rulings.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.