Argued September 24; affirmed October 15, 1946.

ALLEN *v.* MULTNOMAH COUNTY ET AL,

(173 P. (2d) 475)

James R. Bain, Judge.

*Frank S. Sever* and *Carey Martin,* both of Portland (with Crum, Dusenbery & Martin, on brief), for appellant.

*Stanley Jones,* Deputy District Attorney, of Portland (with T. B. Handley, District Attorney, of Portland, on brief), for respondents.

HAY, J.

In this suit, plaintiff, the owner of an apartment house in Portland, sought to enjoin the defendant county and its sheriff from collecting taxes which, as of January 1, 1944, had been levied against certain household furniture owned by plaintiff and installed and in use by his tenants in the several apartments of his apartment house. He contends that, by the law of Oregon, such household furniture was exempt from taxation. The court sustained a general demurrer to the complaint. Plaintiff refused to plead further, and, the court having thereupon dismissed the complaint, he appeals.

In Oregon, all taxes are required to be levied and collected under general laws operating uniformly throughout the state. Ore. Const., Art. IX, section 1. Uniformity of taxation, upon subjects of like classification, is mandatory. Id., Art. I, section 32. All real property and all tangible personal property within the state, except as otherwise provided by law, is subject to assessment and taxation in equal and ratable proportion. Section 110-101, O. C. L. A., as amended by chapter 440, Laws 1941. Furniture and personal effects are classified as tangible personal property. Section 110-103, O. C. L. A. Therefore, plaintiff's property is taxable, unless, by law, it is specifically exempted.

The statute upon which plaintiff relies, as it existed at the time of the levy of which he complains, is codified as section 110-201, O. C. L. A. So far as pertinent, it reads as follows:

"The following property shall be exempt from taxation: * * *

"(8) All household furniture, domestic fixtures, household goods and effects actually in use as such in homes and dwellings; also all wearing apparel,

watches, jewelry and similar personal effects actually in use."

■ It is the duty of the courts to scrutinize carefully all claims of exemption from taxation, and to approve such claims only in the event that they fall within a specific legislative grant of exemption based upon a rule of sound public policy, "or such as, at least, makes the public at large interested in encouraging or favoring the class or interest in whose behalf the exemption is made." 2 Cooley, Taxation, 4 ed., ch. 13, section 653.

■ Throughout most of the American states, public policy has approved either entire or partial exemption of household furniture from taxation. Such furniture is a relatively small factor in the aggregate value of all taxable property, and is a class of property that everyone alike may be supposed to own. It is considered, therefore, that a general exemption thereof tends to equalize itself, and, for that reason, does not conflict with constitutional provisions respecting equality and uniformity of taxation. 51 Am. Jur., Taxation, section 547. Moreover, in the assessment of household furniture and personal effects, the assessors would be obliged to pry into the intimate domestic affairs of the people, a procedure which is regarded as not being justified by the relatively small amount of revenue which might be derived thereby. *Day v. Lawrence,* 167 Mass. 371, 373, 45 N. E. 751; Stimson: Exemption From the Property Tax in California, 21 Cal. Law Rev., p. 193. Exemptions of this sort would appear to be reasonable, and we have held that the grant of reasonable exemptions is within the authority of the state legislature. *Portland v. Kozer,* 108 Or. 375, 379, 217 P. 833; *McPherson v. Fisher,* 143 Or. 615, 622, 23 P. (2d) 913.

The history of this class of exemptions began with the act of January 26, 1855, passed by the territorial legislature. Section 6 of the act exempted from taxation "the personal property of every householder, to the amount of three hundred dollars, the articles to be selected by such householder, * * *". Deady, Gen. Laws, 1845-1864, p. 630. This act was still in force when Oregon achieved statehood in 1859, and, by Art. XVIII, section 7 of the state Constitution, was continued in effect. Section 6 was amended in 1903 (Gen. Laws, 1903, special session, p. 28), so as to exempt household goods, furniture and utensils, and certain other personal property, "if owned by a householder and in actual use, or kept for use, by and for his or her family". This amendment was declared unconstitutional in *Wallace v. Board of Equalization* (1906) 47 Or. 584, 86 P. 365, in that, as between residents and nonresidents, it violated the constitutional guaranty of equality and uniformity of taxation. In 1907 (Gen. Laws, 1907, ch. 268, sec. 4), the section was, in effect, reenacted in the language of the act of 1855. In 1912, the people of Oregon, by initiative procedure, amended the section to read as set forth in the beginning of this opinion. (Section 110-201, O. C. L. A.)

▮ So far as practicable, all property should be required to bear its proportionate share of the public burdens, and it is familiar doctrine that taxation is the rule and exemption the exception. No exemptions should be allowed, therefore, unless they are plainly warranted, and the intent of the legislature to exempt must be clear beyond a reasonable doubt. *Hibernian Benevolent Society v. Kelly,* 28 Or. 173, 195-6, 42 P. 3, 30 L. R. A. 167, 52 Am. St. Rep. 769. An intention to exempt will not be implied from language which is

susceptible of any other reasonable interpretation. *Kappa Gamma Rho v. Marion County,* 130 Or. 165, 170-1; 279 P. 555.

■ If the statute is ambiguous, it is our duty to interpret it, by resort to the rules of statutory construction, in order to determine the legislative meaning, if that be possible. We think that there is, in fact, some ambiguity or uncertainty as to the meaning of "household furniture * * * actually in use as such in homes and dwellings". No doubt, in popular understanding, "household furniture" means that type of furniture which is usually devoted to domestic uses. In this sense, a literal interpretation of the words would appear to include furniture of this sort, in actual use in homes, irrespective of its ownership. We think, however, that emphasis must be placed upon the adjective "household". As a noun, the word has been defined as "persons who dwell together as a family". *Arthur v. Morgan,* 112 U. S. 495, 5 S. Ct. 241, 28 L. ed. 825. "The words 'family' and 'household' are often interchangeably used. A family is a collective body of persons living in one house and under one manager. It consists of those who live with the pater familias." *Vaughn v. American Alliance Ins. Co. of New York,* 138 Kan. 731, 27 P. (2d) 212.

"* * * The term 'family' is one of a very comprehensive and varied signification; and, as said by Judge Ellison in Lister v. Lister, 73 Mo. App. loc. cit. 104: 'It may be of narrow or broad meaning as the intention of the parties using the word, or as the intention of the law in using it, may be made to appear.' It may be seen by reference to the standard dictionaries of the English language that this word comes from the Latin *familia,* the definition of which is *household.* * * *" *Ferbrache v. Grand Lodge,* 81 Mo. App. 268, 271.

■ When used as an adjective, "household" means "of or pertaining to a household". Webster's New International Dictionary. "Belonging to the house and family; domestic; as, household goods. Household stuff, the goods and chattels of a family." Funk & Wagnall's New Standard Dictionary. Applying these definitions to the statutory language, and having in view the general legislative intention to tax all tangible personal property except as otherwise provided by law (Laws, 1941, ch. 440), we think that the furniture intended to be exempted was the furniture of families or households. The use of rented furniture by a tenant does not, in our opinion, make such furniture "household furniture" within the meaning of the statute. On the contrary, such furniture may be more accurately described as "apartment house furniture" as similar furniture, when used in hotels, is commonly called "hotel furniture". In *Mueller v. Richardson,* 82 Tex. 361, 18 S. W. 693, it was held that hotel or restaurant furniture, being used for the purposes of business and profit, ought not to be classified as "household and kitchen furniture" within the meaning of an exemption statute.

■ When the legislative intent has been ascertained, it should be given effect, even although, in doing so, the literal meaning of the words used is not followed. *Wood v. State,* 133 Tex. 110, 126 S. W. (2d) 4, 121 A. L. R. 931, 935. In arriving at the legislative intention, it is proper for the court to take into consideration the policy and purposes of the act, and to consider, in that connection, whether or not such policy and purposes will be attained by a literal interpretation of the language used. *Banfield v. Schulderman,* 137 Or. 167, 178, 296 P. 1066, 298 P. 905. The exemption of house-

hold furniture generally would appear to be justifiable in principle. Such exemption tends to encourage the establishment and maintenance of families in households, and to engender a sense of family security, purposes somewhat akin to the humanitarian sentiments under which the implements whereby a person habitually earns his living, (e. g., the tools of a mechanic), and certain basic minima of the means of subsistence, are exempted from execution. Sections 6-1201, et seq., O. C. L. A.; *Frantz v. Dobson,* 64 Miss. 631, 2 So. 75, 76, 60 Am. Rep. 68; *Smith v. Osburn,* 53 Iowa 474, 5 N. W. 681, 682. If the plaintiff himself maintains a home, his household furniture therein is exempt from taxation, and, in this respect, he is a beneficiary of the general exemption. The general language of the statute should be limited to the persons and subjects to which it is reasonable to suppose it was intended to apply, especially when a literal interpretation would lead to harmful and absurd consequences. *Spokane Valley L. & W. Co. v. Kootenai County, Idaho,* 199 F. 481, 484. To allow plaintiff exemptions in respect of the furniture of the many households maintained by his tenants in his apartment house, would appear to be unreasonable. It must be borne in mind that the effect of all such exemptions is to subsidize the owners of the exempted property at the expense of the taxpayers generally. There is no reason in public policy why plaintiff's productive personal property, devoted to business uses in competition with hotels, tourist camps, and similar enterprises. should be subsidized by the taxpayers.

Counsel for respondents conceded upon the oral argument that an apartment in an apartment house, when occupied by a family for residential purposes, is a home or dwelling within the purview of the statute.

■ Exemptions from taxation are either personal, being granted directly in favor of such persons as are within the contemplation of the act, or impersonal, being granted directly in favor of a certain class of property. *Grand Canyon Ry. Co. v. Treat,* 12 Ariz. 69, 75, 95 P. 187. In the latter class is an exemption of cemeteries or burial places. It has been held that a constitutional exemption of cemeteries from taxation applies, without qualification as to ownership, to all cemeteries, and that the legislature has no authority to deny exemption to cemeteries held for profit. *Elmwood Cemetery Co. v. Tarrant,* 170 Ala. 459, 462, 54 So. 186. The constitution of California (Art. XIII, sec. 1) exempts from taxation property used "exclusively for public schools". In *Ross v. City of Long Beach,* 24 Cal. (2d) 258, 148 P. (2d) 649, it appeared that a school district held under lease certain real property, upon which there was situated a building used by the district as a public school. The owner of the real property claimed that, under the constitutional provision, it was exempt from taxation. The court held that, in consideration of the great benefits derived by the people from the maintenance of its educational institutions, it had been the steadfast policy of the state to encourage in every possible way the cause of education. In furtherance of such policy, the framers of the constitution had undertaken to relieve educational institutions from the burden of taxation. The exemption was not granted for the benefit of a private owner who might rent his property for public school use, but rather for the advantage of those school districts which, having no land of their own, might be obliged to rent land and erect buildings thereon for school purposes. In view of the tax exemption, such school districts would be enabled to rent real property at less than current rates. The court concluded that the

property in question, irrespective of ownership, was used exclusively for public school purposes, and was thus exempt from taxation. We are of the opinion, however, that the decision is not in harmony with the better reasoned cases, and that it is unsound in principle. Anno.: 157 A. L. R. 860, at 867.

In *State ex rel. Hammer v. Macgurn*, 187 Mo. 238, 86 S. W. 138, 2 Ann. Cas. 808, in construing constitutional and statutory provisions under which lots in incorporated cities, when used exclusively for school purposes, were exempted from taxation, it was held that, where a private owner had leased such a lot for school purposes at an annual rental, the lot was not exempt from taxation. The owner contended that the rent had been diminished by an amount equal to the taxes, and hence, that he was entitled to the benefit of the exemption, but the court, in denying his claim, held that, for aught that appeared in the record, the landlord had charged the school as much rent as he would have charged anyone else.

A South Dakota statute exempted from taxation "all property belonging to any charitable, benevolent or religious society, or used exclusively for charitable, benevolent or religious purposes". A fraternity chapter-house association, which was not itself a charitable society within the meaning of the statute, leased a building to a fraternity chapter for chapter-house purposes, at a money rental equivalent to an ordinary amount of rent. Under those circumstances, it was claimed that the property was exempt from taxes. We quote from the opinion of the court:

"* * * Analysis has convinced us that when this problem is approached from the aspect of 'use of the property,' ownership of the property con-

tinues as a factor to be considered. An exemption of this type is granted as a concession by government in return for unselfish ministrations to human welfare. That this concession is intended by the Legislature as a quid pro quo is asserted by authority. Carteret Academy v. State Board of Taxes and Assessment, 102 N. J. L. 525, 133 A. 886, 887; 61 C. J. 382. If the advantage of the concession so made be permitted to accrue to ownership rather than to the benevolence the law seeks to foster or promote, obviously the purpose of the law will be defeated. Therefore, the landlord may not claim exemption of property leased to an institution of one of the enumerated classes for a rent equivalent. As to such an ownership, the property is used exclusively for rental purposes, and not for charitable or benevolent or educational, etc., purposes. (Citing cases.)

"Appellant stands in no better position than the ordinary landlord. In both instances the money equivalent exacted from the charity or benevolence intercepts the flow of the concession offered by the state, and operates to withhold it from that charity and benevolence. * * *" In re South Dakota Sigma Chapter House Ass'n, 65 S. D. 559, 566, 276 N. W. 258.

The constitution of Minnesota exempted from taxation "all churches, church property and houses of worship". In State v. Union Congregational Church, 173 Minn. 40, 216 N. W. 326, it was held that a lot and dwelling-house owned by a church corporation, not used as a residence for its minister or in connection with its religious or charitable work or activities, but rented to others for a cash rental, which rental the church used in furtherance of its religious activities, were not exempt from taxation. Quoting from State v. Carleton College, 154 Minn. 280, 191 N. W. 400, the court said: "If the church could acquire and hold free from taxes

property used in business enterprises, she would depart from her true mission and become a competitor of other business concerns, a field in which she is entitled to no advantage over them.'' It was held that the property was not ''church property'' within the meaning of the exemption, notwithstanding the fact that the constitutional provision, which had formerly included ''all churches, church property used for religious purposes, and houses of worship'', was later amended by the omission of the qualifying words, ''used for religious purposes''.

In *Spohn v. Stark*, 197 Ind. 299, 150 N. E. 787, 788, the court construed a statute of Indiana exempting from taxation all real and personal property used exclusively by the Indiana National Guard for armory purposes. A private person had leased real property to the Indiana National Guard for armory purposes, at an annual rent in excess of thirty per cent per annum of the taxable value of the property. He claimed exemption from taxation. The state constitution provided for a uniform and equal rate of assessment and taxation. The court was of the opinion that it was its duty, in construing the exemption statute, to give it such interpretation, if possible, that it would not be invalid by reason of conflict with the constitution. It held that, under such interpretation, the property in question was not exempt. We quote:

" 'It is the use of its property for the purposes named in the Constitution that entitles an educational, religious or charitable institution to exemption from taxation; but an owner who has not set apart his property for such use cannot get the benefit of such exemption, merely because he rents or suffers the property to be used for such purpose. That would be an exemption for private gain, and a perversion of the enlightened purposes had in view

by the framers of the Constitution.' Travelers' Ins. Co. v. Kent, 50 N. E. 562, 564, 151 Ind. 349, 353, 354; Oak Hill Cemetery Co. v. Wells, 78 N. E. 350, 38 Ind. App. 479, 482; City of Indianapolis v. Grand Master, etc., Grand Lodge, 25 Ind. 518, 521; Orr v. Baker, 4 Ind. 86, 88.

"It appears that, so far as plaintiff and his interest in the property as lessor are concerned, the only use which he has made of the property is for rental purposes to earn an income for his private advantage. * * *"

See also *Commonwealth v. First Christian Church*, 169 Ky. 410, 183 S. W. 943, Ann. Cas. 1918B, 525, 539; *State ex rel. Ward v. Board of Assessors*, 46 La. Ann. 859, 15 So. 384.

In *Behnke-Walker Business College v. Multnomah County*, 173 Or. 510, 519, 146 P. (2d) 614, this court had under consideration a claim by a corporation of tax exemption in respect of its real and personal property, which was devoted by it exclusively to the purposes of conducting "a school of the type commonly called a business college". Subdivision 3 of section 110-201, O. C. L. A., exempted from taxation "personal property of all literary, benevolent, charitable and scientific institutions incorporated within this state, and such real estate belonging to such institutions as shall be actually occupied for the purposes for which they were incorporated". It was contended that the property in question was exempt, as belonging to a literary and scientific institution within the meaning of the statute. In rejecting this contention, this court said that it found nothing in the statute which would indicate that the legislature intended to exempt from taxation private property used for private profit, but that it appeared, on the contrary, that it intended to exempt only such property as had been "sequestered

or devoted to public uses". It is true that the legislature has exempted from taxation certain classes of property used for private profit, examples of which are cemeteries, (section 110-201 (4), O. C. L. A.) and a limited amount of the property of war veterans and their widows (section 110-204, as amended by Laws 1945, ch. 412), and others. It may be presumed, so far as the present discussion is concerned, that such exemptions are justifiable upon broad considerations of public policy, but nevertheless it is axiomatic that all private property should bear its share of the general public burdens, and that statutory grants of exemption should be construed strictly in favor of the state and against the claimant. We are of the opinion that no exemption should be permitted in any event, unless the intention of the legislature to grant it is clearly and unmistakably indicated by the language of the exempting statute.

█ It is strongly contended by appellant that, whereas the earlier versions of the statute extended exemptions to householders only, the 1912 amendment exempted all household property actually in use as such, irrespective of ownership. He relies in this connection upon the well-established rule that it is not to be presumed that the legislature did a vain thing when it amended the statute. *Malloy v. Marshall-Wells Hardware Co.,* 90 Or. 303, 320, 173 P. 267, 175 P. 659, 176 P. 589; *Rieger v. Harrington,* 102 Or. 603, 613, 203 P. 576; *United States v. Bashaw,* 50 F. 749, 754; 50 Am. Jur., Statutes, section 275.

The amendment, however, was far from being a vain gesture. The former statute exempted only the personal property of every householder to the value of $300, the articles to be selected by the householder. The amendment exempted all household furniture, domestic

fixtures, household goods and effects actually in use as such in homes and dwellings, as well as wearing apparel, watches, jewelry and similar personal effects actually in use. As the amendment was adopted by initiative, we turn to the 1912 Voter's Pamphlet as an aid to its interpretation. *Northern Counties Invest. Trust v. Sears,* 30 Or. 388, 41 P. 931, 35 L. R. A. 188; Anno., 70 A. L. R. 5. The affirmative argument therein (there was no negative one) was submitted by the Legislative Tax Committee and the Board of State Tax Commissioners, and indicates clearly, we think, that the proponents of the measure had no thought that it would extend exemption to income-producing personal property, such as plaintiff's property in this case. We quote:

"For the year 1911 the total assessed valuation of all household furniture, watches, jewelry and similar personal effects in Oregon amounted to only 1.48 per cent of the total taxable property of the State. In this class were included hotel furniture, private law libraries, and other items that would not be exempted under the proposed law.

"The entire exemption of the property specified in paragraph 8 would have very slight effect on the distribution of taxes; at the same time it will afford needed relief to a great number of people *whose worldly possessions consist chiefly of this class of unproductive personalty.* In actual practice the smaller lists of household furniture and personal effects are usually assessed at a higher percentage of their true value than are the larger lists owned by the better-to-do residents. The assessment of watches and jewelry is almost a negligible quantity and their complete exemption would have practically no effect.

"Arguments have been advanced for an exemption limited to five hundred dollars or even less; but the amount of this class of property that would re-

main after taking out the exemption would be very small, and the tax derived therefrom would pay only a small part of the expense involved in making the assessment, computing the exemption and collecting the tax. From consideration both of justice and expediency this class of *unproductive,* tangible, personal property should be entirely exempted." (Italics ours.)

At about that period, the question of exempting from taxation unproductive, tangible personalty, such as household furniture, was attracting the attention of taxing authorities throughout the nation, and the argument in the Voter's Pamphlet includes a quotation from the report of a committee on practical substitutes for personal property tax (of which Professor Edwin R. A. Seligman, a distinguished economist and authority on tax matters, was chairman) to the fifth annual conference of the National Tax Association, held in Richmond, Virginia, in 1911. The quotation further evidences the fact that the proposed exemption of household furniture was intended to apply only to unproductive property of that character. It reads as follows:

"*Unproductive* Tangible Personal Property * * * requires space for which rent is paid, so that it is in a measure roughly reached by the tax on real estate. *Household furniture* is recognized as a necessary burden rather than as an asset, and in many States a certain amount is exempted by constitution or statute. *Its assessment is always difficult and arbitrary.* Pennsylvania has not taxed household and personal effects for many years, and in most of the Canadian provinces such property is exempt. Valuable furniture and paintings will occupy valuable residence property, and their entire exemption would make only a trifling increase in real estate taxes and would not disturb the distribution of tax burdens. The same is more or less true of other unproductive personalty. Where, as is

usually the case, its fiscal significance is slight, your Committee recommends exemption rather than any substitute." (Italics ours.)

■ In construing the statute, we may take into consideration the contemporaneous construction placed upon it by the officers or departments charged with the duty of administrating it. 50 Am. Jur., Statutes, section 319; 59 C. J., Statutes, section 609 (3); *Spencer v. Portland,* 114 Or. 381, 235 P. 279. Such contemporaneous construction, "especially when it has long prevailed, is entitled to great weight, and should not be disregarded or overturned except for cogent reasons, and unless it is clear that such construction is erroneous." *Spencer v. Portland,* supra. Contemporaneous executive construction "is very persuasive upon the meaning of the statute and affords strong grounds against the placing of a different construction (thereon) even if the language of the act would seem to indicate that such was the real meaning of the words used in the statute." *Portland v. Welch,* 126 Or. 293, 295, 269 P. 868. Cf. *Broadway-Madison Corp. v. Fisher,* 164 Or. 401, 408, 102 P. (2d) 194.

It was conceded by counsel for appellant upon the oral argument that the taxing authorities of the state had, from the very beginning, construed the amendment of 1912 as not exempting apartment house furniture from taxation. We take judicial notice, moreover (section 2-502 (3), O. C. L. A.), of an official opinion of the Attorney General, under date of October 10, 1941, construing the act, wherein he said, in part, as follows:

"It is the use that is being made of the property that constitutes the test by which the answer to your query must be determined. It seems entirely reasonable, and within the purpose of the exemption, to determine that the use referred to is use by the per-

son claiming the exemption. It is self-evident that household furniture, domestic fixtures, household goods and effects rented or leased as a part of furnished premises are being used by the owner for profit, and as items or elements of business. Such being the case, the property does not constitute household or domestic furniture, goods or effects used as such by the owner, who, of course, is the person that will claim the exemption."

We feel at liberty to assume that, when the legislature, in 1945 (Oregon Laws 1945, ch. 296), further amended the statute to read as follows:

"The following property shall be exempt from taxation: * * *

"(8) All household furniture, goods and furnishings actually in use by the owner thereof in his or her dwelling or place of abode and not for sale or in commercial use; also all wearing apparel and other personal effects held by any person for his or her exclusive use and benefit and not for sale or commercial use."

it was aware of the administrative interpretation which the taxing authorities had consistently applied, as well as of the above mentioned opinion of the Attorney General, and that that amendment was intended to remove any possible uncertainty as to the previous meaning of the act.

It is our opinion that the decision of the trial judge was proper. The decree is affirmed, with costs.

---

ROSSMAN, J., dissenting.

The unambiguous language of § 110-201, subd. 8, O. C. L. A., convinces me that it exempts household furniture from taxation, regardless of whether or not the householder owns the furniture. The majority con-

cede that household furniture located in an apartment house is exempt from taxation if owned by the occupant. Therefore, such belongings are household furniture, even when situated in an apartment house. Some apartments are rented furnished, others are rented unfurnished or partly furnished. Section 110-201, subd. 8, exempts household furniture in an apartment provided it is "actually in use as such." "Use", not ownership, is the determining factor. I know of no ambiguity in the act, and believe that it exempts from taxation household furniture located in an apartment, whether or not the occupant owns the furniture. But if resort may be had to the rules used for the construction of ambiguous legislation, then the history of our legislation dealing with the taxation of household furniture makes it clear that the act before us exempts from taxation the appellant's furniture. I shall mention only three of our enactments upon this subject. General Laws of Oregon, 1903, Special Session, page 28, exempted household furniture "if owned by a householder." The act now under consideration, which was adopted in 1912, abandoned the restrictive clause just mentioned. It exempts "all household furniture" and employs no qualifying or restrictive language whatever. Our most recent enactment upon the subject, 1945 Oregon Laws, chapter 296, exempts "all household furniture * * * in use by the owner thereof in his or her dwelling or place of abode and not for sale or in commercial use." That history shows that the act before us grants exemption regardless of ownership.

I dissent.