OPINION
 I. INTRODUCTION
This matter comes before the court based upon a partial stipulation of facts and a brief trial as to other facts.
 II. FACTS
The relevant facts are that Plaintiffs, WorldMark, The Club (Worldmark), and Residence Club at Seaside Owners Association (Residence Club; collectively, taxpayers), are two nonprofit corporations that are homeowners' associations. They each own certain personal property, in the nature of furniture and appliances, located in dwelling units in a multi-story building. Those dwelling units were developed by Trendwest Resorts, Inc. (Trendwest). (Stip Facts at 2, ¶ 2.) The land and improvements comprising the units was conveyed to certain persons in connection with a fractional interest timeshare program or to taxpayer Worldmark in connection with a timeshare program. (Id. at 3, ¶ 10; 4, ¶ 16.) *Page 2 
The personal property located in the dwelling units comprising the programs is owned by one or the other of the taxpayers. (Id. at 3-4, ¶¶ 10, 15; 5, ¶¶ 20, 21.) At the inception of the program, Trendwest conveyed the personal property for all units to one or the other of taxpayers. (See id.) That conveyance was made without consideration flowing to Trendwest. Trendwest did, however, retain the exclusive right to market timeshare interests in the program associated with Worldmark as well as certain fees paid by participants in that program. (Id. at 4, ¶ 15; 5, ¶ 21.) It also, as developer, had the opportunity to receive any consideration paid by persons who acquired fractional interests in those units subject to the fractional interest program for which taxpayer Residence Club was the homeowners' association. (Id. at 3, ¶ 11.)
Taxpayers are charged with the management of the real and personal property associated with the dwellings. They, in turn, have entered into contracts with Trendwest for the comprehensive management of the real and personal property. (Trial Tr at 50, Jul 28, 2009.) The management responsibilities include the maintenance, repair, and replacement of the personal property as well as the management of the occupation rights and responsibilities of the timeshare and fractional interest owners. (Id. at 33.) For this management role, Trendwest receives a fee. (Stip Exs 18, 25, 26.)
The dwelling units and activities surrounding them are governed by the provisions of ORS chapter 94 relating to timeshare programs and by ORS chapter 100 relating to condominium projects.[1]
 III. ISSUE
Is the tangible personal property owned by taxpayers subject to exemption under ORS 307.190? *Page 3 
 IV. ANALYSIS
Although taxpayers' pleadings contained a count or claim relating to allegedly unequal treatment, that claim was not pursued at trial. The remaining claim is for a refund of personal property taxes paid by taxpayers in respect of the personal property in question. (See Compl at 6.) As to that claim, taxpayers rely on ORS 307.190 which provides:
 "(1) All items of tangible personal property held by the owner, or for delivery by a vendor to the owner, for personal use, benefit or enjoyment, are exempt from taxation.
 "(2) The exemption provided in subsection (1) of this section does not apply to:
 "(a) Any tangible personal property held by the owner, wholly or partially for use or sale in the ordinary course of a trade or business, for the production of income, or solely for investment.
 "(b) Any tangible personal property required to be licensed or registered under the laws of this state.
 "(c) Floating homes or boathouses, as described in ORS 830.700."
The major premise of taxpayers' argument is that ORS 307.190 only requires that the personal property in question here be held for personal use by someone — not necessarily the owner. The minor premise of taxpayers' argument is that this property is used for personal purposes by the fractional interest owners and the timeshare participants. Taxpayers conclude that the personal property is therefore exempt from taxation.
Taxpayers essentially "look through" the legal title ownership by the nonprofit corporations to the actual users of the property and test their reading of the statute at the level of those persons. Taxpayers do not argue that the legal owners of the property, the nonprofit *Page 4 
corporations — held the property for their own "personal" use. They are, in essence, arguing that the use of timeshare or fractional interest owners should be attributed to the legal owners of the property for purposes of applying ORS 307.190.
In opposition, Defendant (the department) argues that the overall arrangements as to this property, the management of it, and its use are all important aspects of the business of Trendwest, a business that involves the development, management and operation of the real properties and personal property that make up the dwelling units. The department asserts that these arrangements are such that the personal property in question is "used," at least in part, in a trade or business, albeit not in the trade or business of the legal owners of the personal property — the nonprofit corporations. Thus, the department also seeks to "look through" the legal owner, but in the direction of Trendwest. The department relies on ORS 307.190(2)(a) that disallows any exemption if the property is held by the owner "wholly or partially" for use in a business or for the production of income.
Taxpayers' claim must be rejected for several reasons. First, assuming that taxpayers' construction of ORS 307.190(1), their major premise, is correct, they have not established the minor premise in the syllogism outlined above. Taxpayers pled that the personal property in question here was held by taxpayers for personal use or enjoyment of the members of the timeshare programs. (3d Am Compl at 6, ¶ 20.) The department denied this allegation. (Ans to 3d Am Compl at 3, ¶ 11.)
Taxpayers bear the burden of proof on this point. There is, however, no evidence in the record as to the identity of the fractional interest owners or timeshare participants or what use each of them made of the tangible personal property that is the subject of this appeal during the period at issue. If any such timeshare participant employed or used the property in a business or *Page 5 
for the production of income, the claim for exemption would be lost at least in part. Given the absolute language of ORS 307.190(2)(a), indeed, the exemption might well be lost in total. The court notes that the record establishes that timeshare participants are permitted to rent out their units or occupancy rights to third parties. (Stip Exs 16 at ¶ 3.2; 19 at ¶ 2.15) Such rental could also constitute use of the property in a business or for the production of income. In addition, this record does not foreclose the possibility that a timeshare owner or fractional interest owner might have used a dwelling for business entertainment or as a prize to customers.
This case could be disposed of on the basis of taxpayers' failure of proof. There are, however, alternative bases for concluding that the personal property in question is not exempt from property taxation. It is to those alternative bases that the court now turns.
Even if the court were to assume that all users of the property made only "personal" use of the property, taxpayers could prevail only if their major premise was valid. That premise is that ORS 307.190 must be read as permitting exemption, even in cases where the "personal use" of the property is not by the owner of the property.
The statutory history of ORS 307.190 does not support that premise. Until 1985, such a reading was foreclosed by the explicit wording of the statute. See ORS 307.190 (1983). Just prior to the 1985 legislative session, the statute required that personal property be held by the owner, "for his personal use, benefit or enjoyment." See id. (emphasis added). That requirement had been an element of the law at least since 1912. (See Ptf's Post-Trial Br at 10-11.)
Further, the Oregon Supreme Court has concluded that the "personal use" requirement in predecessor statutes was linked to the owner of the personal property, even when the statute did not explicitly so state. Allen v. Multnomah County was a case involving furniture and appliances within an apartment building. 179 Or 548, 550, 173 P2d 475 (1946). The statutory *Page 6 
predecessor to ORS 307.190, in effect for the year, did not explicitly require that the personal use of the property be by the owner. Id. at 550-51. Notwithstanding this fact, the court surveyed the history of the exemption now found in ORS 307.190 and held that the exemption did not apply to such property owned by one person but used by another for personal use or enjoyment.Id. at 552-64.
The 1985 amendment to ORS 307.190, upon which taxpayers place great reliance, was as follows:[2]
 "SECTION 1. ORS 307.190 is amended to read:
 307.190 (1) All items of tangible personal property held by the owner, or for delivery by a vendor to [him] the owner, for [his] personal use, benefit or enjoyment, are exempt from taxation.
 "(2) [The exemption provided in subsection (1) of this section does not apply to any such] All the following items of tangible personal property are taxable:
 "(a) Any tangible personal property held by the owner, wholly or partially for use or sale in the ordinary course of a trade or business, [or] for the production of income, or solely for investment. [or to]
 "(b) Any tangible personal property required to be licensed or registered under the laws of this state, except aircraft required to be registered under ORS 493.080.
 "(c) [(3) The exemption provided in subsection (1) of this section does not apply to] Floating homes or [to] boathouses, as defined in ORS 488.705 [,both of which are taxable personal property]."
Or Laws 1985, ch 614, § 1.
As to subsection (1) of the statute, the amendment eliminated the masculine pronouns "his" and "him," each of which related back to the word "owner." Id. The amendment could well have been an attempt to remove gender specific terms — in this case, "him" and "his." It *Page 7 
could also have been done to make the construction in subsection (1) of ORS 307.190 consistent with the provisions of subsection (2) that stated of property held by an "owner" for use or sale in a trade or business — without specifying that the trade or business be "his." It could also have been simply editing out unnecessary and redundant terms. After all, if property is held by an owner for personal use and enjoyment, isn't it redundant to specify that it be "his" enjoyment when he is "holding" it? What was the purpose of the 1985 amendment?
The court cannot tell what the legislature had in mind. The legislative history of the bill making the 1985 amendment to ORS 307.190 is silent as to motivation or intent. Almost all of the time of the legislative committees appears to have been consumed with provisions added to subsection (2)(b) dealing with taxation or registration of aircraft and with limitations on taxation of certain leased property under ORS 307.110. SB 275 (1985); Or Laws 1985, ch 614. Nothing in the legislative history supports the inference or conclusion that the legislature was embarking on a major change to the basic rules of exemption for personal use property that had long been reflected in ORS 307.190(1) and related case law.
This absence of evidence, this "dog that did not bark," is of significance in the construction of the statute as amended. SeeState v. Blair, 348 Or 72, 228 P3d 564 (2010). In Blair, the Supreme Court concluded that when a statutory scheme has had one set of consistent provisions and has been the subject of judicial construction, minor amendments to the statute should not be read as working a major change in the statutory program, at least absent explicit evidence in the legislative history that the legislature had such an intention. Id. at 79-80.
Blair requires that the 1985 amendments to ORS 307.190(1) be read as minor in character and not as support for the conclusion that the legislature meant to work the significant substantive change exempting property from taxation if anyone used the property for "personal *Page 8 
use," even when the owner did not do so. See id. at 79-80. Any such change in the law would have meant abandoning a longstanding set of statutory provisions. See id. at 80. It would also have had the effect of altering the judicial construction of an even less specific statutory predecessor. That construction, in theAllen case, was that an apartment owner does not enjoy a property tax exemption just because the tenants make "personal use" of the sofa or range — even when the statute does not explicitly link the personal use to the owner of the property. 179 Or at 554-555.
There is no indication in the legislative history of the 1985 amendment that the legislature had any such thing in mind. Quite to the contrary, if the legislature intended to separate the concepts of ownership and use, why would it have retained the notion of an owner holding property? The legislature could much more easily just have required only that personal property be used for personal use or enjoyment. No reference to an owner or the concept of "holding" would have been needed. That result is the one for which taxpayers here contend. Given the statutory and judicial history of the exemption for tangible personal property and the absence of any indication that the 1985 legislature intended major changes to the exemption, the court cannot accept taxpayers' construction.
ORS 307.190 must be read as having the same "use by owner" requirement as it had prior to 1985. That being the case, the property here is not exempt as it is not used by the nonprofit corporations for personal use. Indeed, the court does not see how any entity that is a legal fiction could ever make "personal use" of any asset.
Further, turning the focus on the nonprofit corporate owners of the tangible personal property, it would also be necessary for such owners to show that they did not hold the property for use in a business. Any such use would result in loss of exemption under ORS 307.190(2). *Page 9 
The corporate owners of the property were incorporated or qualified to operate in Oregon under ORS chapter 65. Incorporation under ORS chapter 65 and the other relevant statute does not mean that the corporation cannot or does not do or engage in "business."[3] Indeed, a nonprofit corporation, especially a mutual benefit corporation such as those found here, may conduct business. See ORS 65.077(16); Cal Corp Code § 7140 (j) and (l) (West 2003).
A nonprofit corporation differs from a for profit corporation by reason of a set of limitations on distributions to members during the life of the corporation. However, not all distributions are prohibited, and it may well be that accumulated economic benefits are distributed to the members of the mutual benefit corporation upon its dissolution and winding up or upon the redemption of membership interests. The governing corporate documents for taxpayers and the relevant state laws permit such distributions on liquidation of taxpayers or redemption of memberships. See
ORS 65.554; Cal Corp Code §§ 7410, 8610 (West 2003). Although participants in the timeshare and fractional interest programs represent to the developer that they are not acquiring participation rights for the purpose of investment, that representation is made to negate one potential motive for the purchase. It does not preclude taking into account the fact that management of the revenues and expenses of the nonprofit corporations could lead to an economic benefit to the members of the corporation.
The record here demonstrates that the corporate owners of the tangible personal property have substantial revenues, attributable for the most part to dues paid by the members in consideration of their ability to use a fully furnished dwelling unit. Taxpayers in turn enter into contracts for the purpose of maintaining and, where necessary, replacing items of tangible personal property, all in accordance with standards and practices set by the board of the *Page 10 
corporate owners, albeit on the recommendation of the contract manager. The nature and extent of the overall activities of the corporate owners of the property is such that the court cannot conclude that they do not constitute conduct of a business for purposes of ORS 307.190(2).
Conduct of a business for purposes of ORS 307.190 is not precluded by the incorporation or qualification of the corporate taxpayers under nonprofit corporation statutes. The statute talks of a business and not a business for profit. The court concludes that the property in question here is used by the corporate owners in a business such that the property is disqualified from exemption under ORS 307.190(2)(a).
 VIII. CONCLUSION
To summarize, the facts regarding the actual use of the property in question by each and every person occupying any unit during the year are critical in determining if the conditions of ORS 307.190 are met. On this point, taxpayers have not carried their burden of proof. In any event, the proper construction of ORS 307.190 is that the personal use and enjoyment of property must be that of the owner. Here the owners cannot, in fact, make any use of property in a "personal" sense. Further, the use that the corporate owners do make of the property is described in ORS 307.190(2)(a) — a business use. That business has substantial revenues and expenses. *Page 11 
Taxpayers are not entitled to refund of the personal property taxes for which they have made a claim in this action. Now, therefore,
IT IS THE OPINION OF THIS COURT that the claims of taxpayers for refund of taxes are denied.
Dated this ___ day of July, 2010.
THIS DOCUMENT WAS SIGNED BY JUDGE HENRY C. BREITHAUPTON JULY 26, 2010, AND FILED THE SAME DAY. THIS IS A PUBLISHEDDOCUMENT.
[1] Unless otherwise noted, all references to the Oregon Revised Statutes (ORS) are to the 2003 edition.
[2] This text shows bracketed language removed from existing law and language in bold being added to existing law.
[3] Residence Club was incorporated in Oregon. (Stip Facts at 2, ¶ 4.) Worldmark was incorporated in California and registered in Oregon. (Id. at 2, ¶¶ 2, 3.)