Argued and submitted April 16, 2021, affirmed September 14, petition for review denied December 29, 2022 (370 Or 694)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JUSTIN GIVENS,
*Defendant-Appellant.*

Coos County Circuit Court
19CR34882; A172654

517 P3d 1021

Defendant was charged with several misdemeanors, was found unfit to stand trial, was committed to the state hospital for restoration, and, after being committed for the maximum period of time permitted under ORS 161.370(10), eventually was ordered to be released to the community for restoration. While defendant was in community restoration, the trial court allowed the state to dismiss the charges without prejudice and to refile some of them the same day. Defendant moved to dismiss those refiled charges pursuant to ORS 161.370(13). ORS 161.370(13) states that the court must dismiss, without prejudice, all charges against a defendant if the court determines that there is no foreseeable, substantial probability that the defendant will gain or regain the capacity to stand trial or that the defendant is "entitled to discharge" under ORS 161.370(10). Pursuant to ORS 161.370(10), a defendant who "remains committed" must be discharged after three years or a period of time equal to the maximum sentence that the court could have imposed upon conviction, whichever is shorter. The trial court denied the motion and, shortly thereafter, found defendant fit to proceed to trial. Defendant entered a conditional guilty plea to one count of resisting arrest, reserving his right to appeal the court's ruling on his motion to dismiss. On appeal, defendant contends that the text, context, and legislative history of ORS 161.370 require dismissal of his refiled charges so long as he remained unfit to stand trial, regardless of whether he was discharged from commitment. *Held*: Under ORS 161.370(13), where a defendant is determined to be unfit to stand trial and has been committed for the maximum period of time permitted under ORS 161.370(10), the trial court is not required to dismiss refiled charges when the defendant is not presently committed to the state hospital.

Affirmed.

Andrew E. Combs, Judge.

Kyle Krohn, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Carson L. Whitehead, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

ORTEGA, P. J.

Affirmed.

## ORTEGA, P. J.

Defendant was charged with several misdemeanors, as we will explain, and was determined to be unfit to stand trial. He was committed to the state hospital for restoration, but eventually the court ordered that he be released to the community for restoration. At the time of his release, defendant's commitment had reached the maximum period of time permitted under ORS 161.370(10).[1] Several months after his release to the community, the trial court allowed the state to dismiss the original charges without prejudice and to refile some of them the same day. Defendant later moved to dismiss those refiled charges pursuant to ORS 161.370(13), but the trial court denied the motion. Shortly thereafter, defendant was found fit to proceed and entered a conditional guilty plea to one count of resisting arrest, ORS 162.315, reserving his right to appeal the court's ruling on his motion to dismiss the refiled charges.

Defendant now appeals, asserting that the trial court wrongly denied his motion to dismiss the refiled misdemeanor charges because he had been committed for the maximum period of time under ORS 161.370(10)[2] and was therefore entitled to dismissal of the charges under

---

[1] The statutes at issue in this case, *former* ORS 161.370(7) (2017) and *former* ORS 161.370(10) (2017), were renumbered in 2019. *See* Or Laws 2019, ch 538, § 2. The bill did not substantively change any of the applicable statutory provisions, and the parties refer to the 2019 version of the statute throughout their briefs on appeal. Since 2019, the statute has again been renumbered. *See* Or Laws 2021, ch 395, §§ 5, 7. The 2021 version of the statute is broken down into two numbers, ORS 161.370 (2021) and ORS 161.371 (2021). The relevant subsections, *former* ORS 161.370(10) (2019) and *former* ORS 161.370(13) (2019) are substantively similar. Thus, for clarity and conformance with the parties' arguments on appeal, we refer to the 2019 version of the statutes throughout this opinion.

[2] ORS 161.370(10)(a) provides:

"A defendant who remains committed under subsection (9) of this section shall be discharged within a period of time that is reasonable for making a determination concerning whether or not, and when, the defendant may gain or regain capacity. However, regardless of the number of charges with which the defendant is accused, in no event shall the defendant be committed for longer than whichever of the following, measured from the defendant's initial custody date, is shorter:

"(A) Three years; or

"(B) A period of time equal to the maximum sentence the court could have imposed if the defendant had been convicted."

ORS 161.370(13).[3] The state disagrees, arguing that ORS 161.370(13) does not require dismissal of charges when a defendant is no longer committed to the state hospital. After considering the text of the statute in its context, along with relevant legislative history, we conclude that the trial court is not required to dismiss refiled charges under ORS 161.370(13) when a defendant is not presently committed to the state hospital. Accordingly, we affirm.

The facts of the case are largely procedural and undisputed. Based on an incident in June 2017, the state charged defendant with several misdemeanors, including two counts of attempted assault of a public safety officer (Class A misdemeanors), one count of resisting arrest (Class A misdemeanor), one count of assault in the fourth degree (Class A misdemeanor), one count of criminal trespass in the second degree (Class C misdemeanor), and one count of harassment (Class B misdemeanor). On September 27, 2017, the trial court found that defendant was unfit to proceed to trial, suspended the charges against him, and committed him to the Oregon State Hospital.[4] On December 28, 2018, the court ordered that defendant be transported to the local jail, pending a hearing in regard to his release to community restoration. And, on January 11, 2019, the court ordered that defendant be released to the community for restoration services.[5] At the time of defendant's release, he

---

[3] Pursuant to ORS 161.370(13),

"If at any time the court determines that the defendant lacks the capacity to stand trial, the court shall further determine whether there is a substantial probability that the defendant, in the foreseeable future, will gain or regain the capacity to stand trial and whether the defendant is entitled to discharge under subsection (10) of this section. If the court determines that there is no substantial probability that the defendant, in the foreseeable future, will gain or regain the capacity to stand trial or that the defendant is entitled to discharge under subsection (10) of this section, the court shall dismiss, without prejudice, all charges against the defendant[.]"

[4] Under ORS 161.370(3)(a), when the court makes the necessary findings to commit the defendant, "the court shall commit the defendant to the custody of the superintendent of a state mental hospital or director of a facility designated by the Oregon Health Authority if the defendant is at least 18 years of age[.]" We refer to the state hospital as shorthand throughout our opinion.

[5] Under ORS 161.370(2)(c)(B), if the court determines that the defendant lacks fitness to proceed, the court must hold a hearing at which the court and the parties will determine the appropriate action in the case, which may include "[c]ommunity restoration as recommended by the community health program

had been committed for a total of 458 days, which is beyond the 364-day maximum sentence he could have received for the misdemeanor charges against him. *See* ORS 161.370(10) (stating that a defendant may only be committed for up to three years or for the maximum time the court could have imposed upon conviction, whichever is less).[6]

Five months later, while participating in community restoration, defendant moved to dismiss the charges pursuant to ORS 161.370(13) on the basis that he was entitled to discharge under ORS 161.370(10). The state opposed the motion but filed its own motion to dismiss on other grounds. Defendant remained in community restoration until May 29, when the court granted the state's motion and dismissed the charges without prejudice. On that same day, the state refiled some of the same charges against defendant—that is, the Class A misdemeanors, based on the same underlying events.[7]

Defendant then filed a second motion to dismiss the refiled charges against him, which is the subject of the case before us. He contended that he was entitled to dismissal because he had been committed for the maximum allowable time under ORS 161.370(10) on the charges the state had originally filed, he remained unfit to stand trial, and "things don't start over just because [the state] dismissed the case and re-filed it." In light of that, according to defendant, he was entitled to dismissal of the refiled charges under ORS 161.370(13). He further argued that dismissal was necessary "whether he's on community restoration or whether he's

director or designee." For community restoration to be a viable action option, the court must receive a recommendation from "a community mental health program director or the director's designee, and from any local entity that would be responsible for supervising the defendant *** concerning whether services and supervision necessary to safely allow the defendant to gain or regain fitness to proceed are available in the community." ORS 161.370(2)(b). Further, the court "shall consider the primary and secondary release criteria as defined in ORS 135.230" in making its determination. Accordingly, as we understand it, community restoration is a form of conditional release where an unfit defendant is ordered released to the community and ordered to comply with release conditions, including the community restoration services.

[6] The circumstances that caused defendant to be committed beyond the allowable statutory maximum period are not part of the record or relevant to any of the issues on appeal.

[7] The state did not refile the Class B or Class C misdemeanor charges.

in the State Hospital," and that it would "completely frustrate" the legislative purpose if the state were allowed to get around the statutory time limits by dismissing and refiling charges. Defendant asked that, in the alternative, the court find him unfit to proceed to trial and order that he participate in community restoration.

In response, the state explained that its aim was to get defendant "in a place where we can prosecute him and find justice." The state contended that, based on the plain language of ORS 161.370(13), dismissal is proper only if, at the time of the ORS 161.370(10) analysis, the defendant was actually committed to the state hospital. Because defendant was no longer committed, dismissal was not proper. The state further asserted that dismissal under ORS 161.370(13) is without prejudice and therefore it could refile the charges within the statute of limitations.

The court found that defendant was unfit to stand trial and ordered that he participate in community restoration. The court also denied defendant's motion to dismiss, reasoning that the state had the "better argument." The court explained that, under a plain reading of the statute, dismissal would not be appropriate because defendant was no longer committed to the state hospital or in the "custody of the Superintendent."

About two months later, the court found defendant fit to proceed and, soon after, he entered a conditional guilty plea for one count of resisting arrest, reserving his right to appeal his second motion to dismiss. Pursuant to the plea agreement, the court imposed 24 months of probation and a $100 fine and dismissed the remaining counts.

We turn to the issue on appeal. We review a trial court's ruling on a motion to dismiss for legal error. *State v. Barnes*, 276 Or App 296, 300, 366 P3d 1198 (2016). As he did below, defendant asserts that because he was committed for the maximum period of time allowable under ORS 161.370(10) on the originally filed charges, he is entitled to dismissal of the refiled charges under ORS 161.370(13). Defendant points to the text, context, and legislative history of ORS 161.370 to argue that, so long as he remained unfit to stand trial, ORS 161.370(13) required dismissal regardless

of whether he was discharged from commitment and the charges were dismissed and refiled. The state also raises the same arguments it did below, contending that, under the plain terms of the statute and its related context, for a dismissal to be mandated by ORS 161.370(13), the defendant must be committed to the state hospital "at the time of the dismissal."

The issue before us is one of first impression and is dependent on the proper construction of ORS 161.370(13). When interpreting a statute, our goal is to "ascertain the meaning of the statute most likely intended by the legislature that adopted it." *State v. Cloutier*, 351 Or 68, 75, 261 P3d 1234 (2011) (citing *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009)). To do so, we examine the text in context, as well as any pertinent legislative history as needed. *Vasquez v. Double Press Mfg., Inc.*, 364 Or 609, 615, 437 P3d 1107 (2019). Of course, text and context must be given "primary weight" in the analysis. *Id.* (internal quotation marks omitted). Accordingly, we begin by briefly describing the statutory framework as a whole.

A defendant who lacks the fitness to stand trial may not be criminally prosecuted. Thus, when a defendant's fitness is called into question, either by the parties or by the court, the court must determine whether the defendant is fit to proceed to trial. ORS 161.370(1)(a); *see also* ORS 161.360(2) (the court may find a defendant unfit if, as a result of a qualifying mental disorder, the defendant is unable to understand the nature of the proceedings against him or unable to assist or participate in his defense); *see also* ORS 161.365 (setting out the procedure for determining issue of fitness to proceed). If the court finds that the defendant lacks the capacity to stand trial, the court must suspend the criminal proceedings and conduct a hearing to determine how best to proceed. ORS 161.370(2)(a). To that end, with certain limiting factors, the court is given a range of actions it may consider. *See* ORS 161.370(2)(c) ("In determining the appropriate action, the court shall consider the primary and secondary release criteria * * *, the least restrictive option appropriate for the defendant, the needs of the defendant and the interests of justice."). Among other actions, the court may order that the defendant be committed to gain or regain fitness

to proceed, undergo community restoration, be released on supervision, face civil commitment proceedings against him, or have the charges dismissed. *Id.* The court must obtain a recommendation from the local entity to assess whether, if the defendant would be released, appropriate community restoration services are present and available in the community. ORS 161.370(2)(b). The court must also make a finding about whether the defendant needs (or does not need) a "hospital level of care." ORS 161.370(3)(a). Where the court makes the necessary findings to commit the defendant, the court must commit the defendant to the custody of a state mental hospital or another designated facility. *Id.*

At any point, if the court determines that a committed defendant has gained or regained fitness to proceed, unless the court concludes that so much time has elapsed that it would be unjust to resume the charges against him, the criminal proceedings are resumed. ORS 161.370(7). Consequently, the hospital superintendent or facility director is required to routinely evaluate a committed defendant for "the purpose of determining whether there is a substantial probability that, in the foreseeable future, the defendant will have the capacity to stand trial." ORS 161.370(8). The superintendent or director must immediately notify the court if the defendant, at any time, gains or regains fitness or will never have the capacity to stand trial. *Id.* On the other hand, if the superintendent or director determines that there is a foreseeable, substantial probability that the defendant will gain or regain the capacity to stand trial, the defendant must remain in commitment and continue treatment designed for that purpose, unless the court orders otherwise. ORS 161.370(9)(a). Further, when a defendant is committed and receiving treatment, the superintendent or director must consider whether the defendant continues to require a hospital level of care and whether there are available services in the community to meet the defendant's needs. ORS 161.370(9)(b). The court may release the defendant for treatment in the community if such treatment is appropriate and available. *Id.*

For a defendant who remains in commitment, due process limits how much time the state can keep him in

custody. *See Jackson v. Indiana*, 406 US 715, 738, 92 S Ct 1845, 32 L Ed 2d 435 (1972) (holding that a defendant in commitment "cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future"). Therefore, under ORS 161.370(10)(a), a defendant who remains committed under ORS 161.370(9) must be discharged "within a period of time that is reasonable for making a determination concerning whether or not, and when, the defendant may gain or regain capacity." In "no event" shall a defendant be committed for longer than three years or "[a] period of time equal to the maximum sentence the court could have imposed if the defendant had been convicted," whichever is shorter. *Id.*; *see also* ORS 161.370(10)(b)(A) (providing that for purposes of calculating the maximum period of commitment described in ORS 161.370(10)(a), the initial custody date is the date the defendant is first committed on any charges alleged by the state); ORS 161.370 (10)(b)(B) (stating that, in calculating the maximum period of commitment under ORS 161.370(10)(a), the defendant is to be given credit against each charge alleged for each day the defendant is committed, whether the days are consecutive or interrupted by a period of time that the defendant has gained or regained fitness and, unless the defendant commits certain serious crimes, for each day the defendant is held in jail before or after the date the defendant is first committed).

		If the maximum time period has elapsed, the hospital or facility must discharge the defendant, *see* ORS 161.370(10), but must also notify the court 30 days beforehand, *see* ORS 161.370(11). If the court receives notice from the superintendent or director under subsection (8)—concerning the defendant's progress or lack thereof—or subsection (11)—that the defendant has been committed for the maximum period of time allowable—the court shall determine whether the defendant presently has the capacity to stand trial. ORS 161.370(12). Further, under ORS 161.370(13), the court has a continuing obligation to assess the defendant's progress and the likelihood that he will gain or regain the capacity to stand trial. ORS 161.370(13) provides:

"If at any time the court determines that the defendant lacks the capacity to stand trial, the court shall further determine whether there is a substantial probability that the defendant, in the foreseeable future, will gain or regain the capacity to stand trial and whether the defendant is entitled to discharge under [ORS 161.370(10)]. If the court determines that there is no substantial probability that the defendant, in the foreseeable future, will gain or regain the capacity to stand trial or that the defendant is entitled to discharge under [ORS 161.370(10)], the court shall dismiss, without prejudice, all charges against the defendant and:

"(a)   Order that the defendant be discharged; or

"(b)   Initiate commitment proceedings under ORS 426.070 or 427.235 to 427.290."

If a defendant is convicted of an offense after being committed to a state hospital or facility, any term of incarceration imposed by the court is reduced by the amount of time the defendant was committed. ORS 161.370(15).

Turning to the parties' arguments, we begin by looking to the plain terms of the dismissal statute, ORS 161.370(13). *See PGE v. Bureau of Labor Industries*, 317 Or 606, 610, 859 P2d 1143 (1993) (Generally, "the text of the statutory provision itself is the starting point for interpretation and is the best evidence of the legislature's intent."). As we described above, under ORS 161.370(13), whether the trial court must dismiss the charges against an unfit defendant occurs in two circumstances. The first is when the court determines that there is no foreseeable, substantial probability that the defendant will gain or regain fitness to proceed to trial. ORS 161.370(13). The second—which defendant contends was prompted here—is when the defendant is "entitled to discharge under subsection (10)." *Id.* Accordingly, whether the trial court erred in denying defendant's motion to dismiss under ORS 161.370(13) depends on whether defendant was "entitled to discharge" according to the terms of ORS 161.370(10).

ORS 161.370(10)(a) states that a defendant "who remains committed under subsection (9)" must be discharged within a reasonable period of time, no longer than three years or the maximum period of time the court could

have imposed upon conviction. It is undisputed that, here, defendant satisfies the last part of the provision, in that he had been committed for the maximum period of time the court could have imposed for the charged misdemeanors. Defendant argues, however, that the time limit continues to apply so long as the state is prosecuting the same charges, and, thus, he is still "entitled to discharge," whether or not he remains committed. To support his argument, defendant points to the statutory direction to include all of the time that a defendant has been committed or jailed for any of the charged offenses when calculating the maximum allowable commitment time and the fact that that time must be credited against each count. *See* ORS 161.370(10)(b). The state generally agrees that the time limits apply to the refiled charges but argues that, under ORS 161.370(10), a defendant is entitled to discharge only when he "remains committed" to the state hospital.

We agree with the state. ORS 161.370(10) provides for discharge of a defendant who "remains committed" under ORS 161.370(9), evincing a legislative intention that a defendant is entitled to discharge only when he is *presently committed. See Webster's Third New Int'l Dictionary* 1919 (unabridged ed 2002) (defining "remain" as "to stay in the same place or with the same person or group" and "to continue unchanged in form, condition, status, or quantity"). Reading ORS 161.370(10) together with ORS 161.370(9) further suggests that a defendant becomes entitled to discharge only when he is still committed. In particular, ORS 161.370(9) describes the process required to enable a committed defendant either to become fit to proceed to trial or to be placed in less restrictive restorative care, *i.e.*, community restoration or supervised release. Therefore, the use of the words "remains committed under subsection (9)" indicate that the legislature intended to provide for discharge when the process of enabling the defendant to become fit for trial or to be transferred to less restrictive restorative care has not been successful. That is, a defendant who must be discharged under ORS 161.370(10) is one who is *presently committed*—not one who is in community restoration or on supervised release—and has also been committed for the maximum allowable period of time.

Defendant contends that the word "entitled" in ORS 161.370(13) indicates that, once a defendant becomes subject to discharge, he remains entitled indefinitely, regardless of whether he is still committed. In other words, he is entitled to discharge and, in turn, entitled to dismissal under ORS 161.370(13) because he has already been committed for the allowed period of time. However, defendant's reading omits the limitation in ORS 161.370(13) that dismissal is required where the defendant is entitled to discharge *under ORS 161.370(10)*. *See* ORS 174.010 (in construing a statute, the court may not insert what has been omitted or omit what has been inserted); *see also Arken v. City of Portland*, 351 Or 113, 156, 263 P3d 975 (2011), *adh'd to on recons by Robinson v. Public Employees Retirement Board*, 351 Or 404, 268 P3d 567 (2011) (noting the "cardinal rule of statutory construction to give significance and effect to every part of a statute" and the "well established principle to avoid interpretations of statutes that render portions of them redundant"). Looking to the entirety of the provision, the only plausible reading is that, at the time the trial court is making its determination under ORS 161.370(13), the defendant must also satisfy the requirements of ORS 161.370(10). Defendant was not committed to the state hospital when the court made its decision. Therefore, he was not, at that time, eligible for discharge as contemplated by ORS 161.370(10) and, in turn, not "entitled to discharge" for purposes of ORS 161.370(13).[8]

Such a reading is also supported by the related context. As the state points out, unlike commitment to the state hospital, no provision of ORS 161.370 limits the period of time a defendant can be treated in the community nor does any provision mandate dismissal when a defendant is unfit to proceed but can still receive community restorative services. *Cf.* ORS 161.370(7) (authorizing the court to dismiss

---

[8] Defendant asserts that the state is somehow getting around the statutory time limits set out in ORS 161.370(10) by dismissing the charges and refiling the same charges and that the state would then be able to commit a defendant longer than constitutionally permissible. But, as we read it and the state appears to concede, if ORS 161.370(10) applies only when a defendant is presently committed, were the state to dismiss and then refile the charges and the court were to recommit the defendant who had been committed for the maximum period of time, the defendant would then be subject to discharge under subsection (10) *and* dismissal under subsection (13). Thus, contrary to defendant's assertions, the defendant would not be committed for longer than due process allows.

charges after a defendant has been found fit but it would be unjust to resume the proceeding in light of the passage of time); ORS 161.370(2)(c)(F) (authorizing the court to dismiss charges as appropriate action after it is determined that defendant lacks fitness to proceed). The only limiting factor applicable to when a defendant is in community restoration is the court's continuing obligation to assess whether the defendant will likely gain or regain the capacity to stand trial. *See* ORS 161.370(13); *see also* ORS 161.370(4)(b), (c). Thus, where a defendant is in community restoration and found unlikely to be restored in the foreseeable future, the charges must be dismissed. *See* ORS 161.370(13) (stating that the court must dismiss charges against an unfit defendant where the court determines that there is no foreseeable, substantial probability that the defendant will gain or regain fitness to stand trial). But if there is a likelihood that the defendant will become fit in the foreseeable future, he must continue treatment in the community. *See* ORS 161.370(4)(a) ("[I]f the court determines that care other than commitment for incapacity to stand trial would better serve the defendant and the community, the court shall release the defendant on supervision for as long as the unfitness endures."); ORS 161.370(4)(c) ("A community mental health program director providing treatment to the defendant in the community shall notify the court if the defendant gains or regains fitness to proceed.").

Defendant contends that the trial court's reading of the statute would render the dismissal provision of ORS 161.370(13) "superfluous." We disagree. If the court dismisses charges for a defendant who was committed beyond the statutory time limits, but there is still a substantial probability that the defendant may become fit to proceed in the foreseeable future by receiving treatment in community care—as is the case here—were the state to refile the charges at that point, the court could order the defendant to participate in community restoration services and continue his treatment towards restoring his capacity. In that regard, the state preserves the defendant's due process rights by ensuring that he will not be held in commitment beyond the statutory time limit, while also preserving the state's ability to bring the defendant to trial. Thus, allowing the state to refile the

charges does not contradict the statutory mandate for dismissal under ORS 161.370(13) or render it superfluous.

Lastly, defendant argues that dismissal was required because the legislature intended for the state to refile charges dismissed under ORS 161.370(13) only if and when the defendant is found competent to stand trial, provided that the statute of limitations has not passed. In defendant's view, the text and related context shows that the purpose of dismissal under ORS 161.370(13) is to remove the defendant from the reach of the criminal legal system unless and until he later becomes fit to stand trial. We are unconvinced by defendant's arguments. Nothing in the statute or its related context prohibits the state from refiling charges unless or until the defendant gains or regains competency. *See State v. Patton*, 237 Or App 46, 50-51, 238 P3d 439 (2010), *rev den*, 350 Or 131 (2011) ("We are prohibited, by statutory command and by constitutional principle, from adding words to a statute that the legislature has omitted."). Conversely, the statute explicitly mandates that charges be dismissed when a defendant is entitled to discharge and remains committed.

Defendant also points to legislative history to support his argument that legislators intended to prohibit the state from refiling charges until a defendant was found fit to stand trial. *See State v. Blair*, 348 Or 72, 80, 228 P3d 564 (2010) (following *Gaines*, "we may always consider pertinent legislative history," even in the apparent absence of ambiguity). Review of the relevant legislative history shows that proponents were concerned about ensuring that the statute conformed with the due process standards as set out in *Jackson*. And, in considering the proposed time limits, committee members wanted to guarantee that the state would still be *allowed* to refile charges, including in circumstances where a defendant regains capacity to stand trial within the statute of limitations for serious felonies. *See* Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, SB 501, May 26, 1993, Tape 115, Side B (statement of Dale Penn that "[d]ismissal without prejudice allows criminal charges to be brought if the high-profile murder defendants regain ability to aid and assist"). But there is no indication of an intent to

prohibit the state from refiling charges where a defendant remained unfit to stand trial at the time he was discharged from commitment.

Further, contrary to defendant's assertions, the three-year time limit was included not to prevent the refiling of misdemeanor crimes subject to lesser statutes of limitations but instead as recommended as the general time it takes to either restore a defendant in order to proceed to trial or to determine that the defendant will not be restored in the foreseeable future. *See id.* (statement of Richard Hulteng, Mental Health Division, explaining why the three-year maximum period of time a defendant could be held in commitment was included: "If the hospital can do anything for the person, they will be able to get results within three years. The charges can be reinstated."). It is not our role to place limitations on the state's *ability* to refile charges when there is no indication that the legislature had such an intent. *See Halperin v. Pitts*, 352 Or 482, 495, 287 P3d 1069 (2012) ("Legislative history may be used to identify or resolve ambiguity in legislation," but we may not refer to it to "rewrite" legislation.); *see also Gaines*, 346 Or at 171 (the court considers legislative history only "for what it's worth," and "what it is worth is for the court to determine").

In sum, because defendant was not committed at the time, as a matter of law, the trial court was not required to dismiss the refiled charges under ORS 161.370(13) solely because defendant remained unfit for trial and had previously been committed for the maximum period of time allowable under ORS 161.370(10). We therefore reject defendant's argument that the trial court erred by denying his motion to dismiss.

Affirmed.